## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| Melanie Glasser, individually and on behalf of all others similarly situated | ) ) ) |
| Plaintiff | ) ) |
| v. | ) ) |
| Hilton Grand Vacations Company, LLC | ) ) |
| Defendant | ) **Jury Demanded** |

### COMPLAINT - CLASS ACTION

Plaintiff, Melanie Glasser ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") for violations by the Defendant, Hilton Grand Vacations Company, LLC ("Hilton Vacations"). In particular, Hilton Vacations placed automated telemarketing calls to cellular telephone numbers without signed, written consent authorizing the use of automated equipment in telemarketing calls to those numbers as required by the Federal Communication Commission's "express written consent" rule. 47 C.F.R. § 64.1200(f)(8).

### JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. §1337, and 47 U.S.C. § 227 (TCPA).

2. Venue in this District is proper because the acts occurred here, Plaintiff resides here, and Hilton Vacations transacts business here.

## PARTIES & FACTS

3. Plaintiff is, and at all times mentioned herein was, an individual citizen of the State of Florida, who resides in Tampa, Florida, which is located in the Middle District of Florida.

4. Hilton Vacations maintains its principal place of business in Orlando, FL.

5. Hilton Vacations is authorized to conduct, and regularly conducts, business in this District.

6. Plaintiff is, and at all times mentioned herein was a "person" as defined by 47 U.S.C. §153(39).

7. Hilton Vacations is, and at all times mentioned herein was a "person" as defined by 47 U.S.C. §153(39).

8. Hilton Vacations conducts telemarketing campaigns to promote the sale of its vacation packages and timeshares.

9. Hilton Vacations uses Automated Telephone Dialing Systems ("ATDS") to place these telemarketing calls.

10. Hilton Vacations' dialing systems are predictive dialers that dial numbers automatically and without human intervention from a stored list or database at certain dialing rates designed to predict when Hilton Vacation's agents will be available come on the line after answer.

11. Hilton Vacations regularly posts job openings on the internet for

employees to work on its telemarketing campaigns that require work with automated telephone systems and predictive dialers.

12. Hilton Vacations has admitted in prior litigation under the TCPA that it uses telephone dialing systems with predictive dialing capabilities in its telemarketing campaigns. In particular, Hilton admitted that its dialing system utilizes a "pacer," which controls the rate at which numbers are dialed by using a predictive algorithm and "call progress analysis software," which transfers the call to the next available agent if it detects a live human response.

13. Throughout the month of February 2016, Hilton Vacations placed numerous telemarketing calls to Plaintiff's cellular telephone, promoting the sale of its promotional vacation packages.

14. The purpose of these calls was to encourage the purchase of Hilton Vacations' promotional vacation packages.

15. At all times relevant herein, Plaintiff was the subscribing user, and exercised dominion and control of, the cellular telephone number that received the subject calls that form the basis of this action.

16. Plaintiff never authorized Hilton Vacations to place automated or prerecorded telemarketing calls to her cellular telephone number.

17. Plaintiff never signed a written agreement authorizing Hilton Vacations to place automated or prerecorded telemarketing calls to her cellular telephone number.

18. Hilton Vacations injured Plaintiff by violating her rights under the

TCPA, by invading her privacy, by wasting her time, and by diminishing the battery life on her cellular telephone. In addition, Plaintiff's wireless carrier charges Plaintiff to receive incoming calls.

## THE TCPA

19. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls. *See Mims v. Arrow Financial Services, LLC,* 132 S. Ct. 740 (2012).

20. Accordingly, the TCPA regulates, *inter alia*, the use of prerecorded messages and use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of prerecorded messages or autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

21. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

22. In 2003, the FCC held that predictive dialers like the one used by defendant constitute an ATDS under the TCPA. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 18 F.C.C.R. 14014, 14115, ¶ 131 (July 3, 2003).

23. In 2015, this definition was expanded. The FCC held that an ATDS may include separately owned and operated equipment integrated to perform dialing campaigns and includes devices with software could potentially be modified to function as an ATDS. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Declaratory Ruling and Order, 2015 FCC LEXIS 1586, *30-43 (2015).

24. Pursuant to its rulemaking authority under the TCPA, the FCC imposed even stricter requirements on automated and prerecorded "telemarketing" calls in 2012. In particular, it is unlawful to:

> "Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any [cellular telephone number], other than a call made with the prior express written consent of the called party."

47 C.F.R. § 64.1200(a)(2). This written consent requirement became effective on October 16, 2013.

25. The term "prior express written consent" means:

> an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

> (i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that:
> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services."

47 C.F.R. § 64.1200(f)(8). Thus, the agreement "must tell consumers the telemarketing will be done with autodialer equipment and that consent is not a condition of purchase." 2015 TCPA Order, 30 FCC Rcd at 8012-13, ¶ 98, n. 333; *see also Lennartson v. Papa Murphy's Holdings, Inc.*, 2016 U.S. Dist. LEXIS 725, *8-9 (W.D. Wash. 2016) (applying the FCC's two-part requirement for express written consent); *Perri v. Rescue 1 Financial, LLC*, 2015 U.S. Dist. LEXIS 95717, * 2 (S.D. Cal. 2015) (same).

## COUNT I: VIOLATION OF THE TCPA

26. Plaintiff restates each of the factual allegations in all other paragraphs as if full stated herein.

27. This claim is for violation of the TCPA by Hilton Vacations.

28. Hilton Vacations, or its agents, used an automatic telephone dialing system to initiate and make telemarketing calls to Plaintiff's cellular telephone number.

29. The subject calls were placed with a predictive dialer.

30. The subject calls were placed to a number assigned to a cellular telephone service.

31.     The subject calls were not placed for emergency purposes, as defined by TCPA § 227 (b)(1)(A)(i).

32.     The subject calls constituted telemarketing or included or introduced an advertisement.

33.     Hilton Vacations did not have Plaintiff's "prior express written consent" to initiate the subject calls.

34.     Hilton Vacations has therefore violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), and its implementing regulations, 47 C.F.R. § 64.1200(a)(2).

## CLASS ALLEGATIONS

35.     Plaintiff restates each of the allegations in all other paragraphs as if full stated herein.

36.     Plaintiff, individually and on behalf of all others similarly situated, bring the above claims on behalf of a Class.

37.     The Class consists of:

> (1) All persons in the United States (2) to whose cellular telephone number Defendant placed a telephone call (3) promoting the sale of its vacation packages or time shares (4) using substantially similar dialing system(s) that called Plaintiff or an artificial or prerecorded voice (5) on or after October 16, 2013 (6) without that person's signed, written agreement authorizing Defendant to initiate automated or prerecorded telemarketing calls to that number.

38.     Hilton Vacations has caused the class members actual harm, not only because they were subjected to the aggravation that necessarily accompanies these calls, but also because consumers frequently have to pay their cell phone service

7

providers for the receipt of such calls; such calls also intruded upon their seclusion, diminished their cellular battery life, wasted their time, and violated their rights under the TCPA.

39. Plaintiff represents and is a member of the Class. Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the Judge to whom this action is assigned, and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

40. Plaintiff does not know the exact number of members in the Class, but based upon the size and national scope of Defendant's business as well as its use of automated dialing systems, Plaintiff reasonably believes that the class members' number at a minimum in the thousands.

41. This Class Action Complaint seeks money damages and injunctive relief.

42. The joinder of all class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to both the parties and the Court in avoiding multiplicity of identical suits. The class can be easily identified through records maintained by Hilton Vacations.

43. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only

individual class members. Those common questions of law and fact include, but are not limited to:

    a. Whether Defendant used an Automatic Telephone Dialing System to place the calls;

    b. Whether Defendant used an artificial or prerecorded voice;

    c. Whether the calls included or introduced an advertisement;

    d. Whether the calls constitute telemarketing; and

    e. Whether Defendant's conduct was knowing and/or willful;

44. As a person who received the telephone calls using an ATDS or an artificial or prerecorded voice, without their prior express consent, Plaintiff asserts claims that are typical of the members of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class, and Plaintiff does not have an interest that is antagonistic to any member of the Class.

45. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes such as the TCPA.

46. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Hilton Vacations to comply with the TCPA. The interest of class members in individually controlling the prosecution of separate claims against Hilton Vacations is small because the statutory damages in an individual action for violation of the TCPA is small. Management of these claims is likely to present significantly fewer

difficulties than are presented in many class claims because the calls at issue are all automated and the class members, by definition, did not provide consent required to authorize calls to their cellular telephones.

47. Hilton Vacations has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the class as a whole appropriate. Moreover, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in her favor and favor of the Class, and against Hilton Vacations for:

1. A declaration that Hilton Vacations' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

2. A declaration that the dialing system(s) Hilton Vacations used to call cellular telephones is an ATDS as defined by the Telephone Consumer Protection Act, 47 U.S.C. § 227;

3. An injunction prohibiting Defendant from using an ATDS, including any predictive dialing systems, to place telemarketing calls to any telephone numbers, including both cellular and landline telephone numbers, to ensure that it does not call place telemarketing calls to Plaintiff with an ATDS in the future.

4. An injunction prohibiting Defendant from using an ATDS, including any predictive dialing systems, to place telemarketing calls to any

telephone numbers, including both cellular and landline telephone numbers, to ensure that it does not call place telemarketing calls to the class members in the future.

5. An injunction prohibiting Defendant from placing telemarketing calls to any telephone numbers, including both cellular and landline telephone numbers, without signed, written agreements authorizing telemarketing calls to those numbers to ensure that Plaintiff is not called without her express written consent in the future;

6. An injunction prohibiting Defendant from placing telemarketing calls to any telephone numbers, including both cellular and landline telephone numbers, without signed, written agreements authorizing telemarketing calls to those numbers to ensure that the class members are not called without their express written consent in the future;

7. An injunction requiring Defendant to file quarterly reports of third party audits with the Court on its system and procedures not to call numbers without signed, written agreements authorizing telemarketing calls to those numbers to ensure that Plaintiff is not called without her express written consent in the future;

8. An injunction requiring Defendant to file quarterly reports of third party audits with the Court on its system and procedures not to call numbers without signed, written agreements authorizing

telemarketing calls to those numbers to ensure that the class members are not called without their express written consent in the future;

9. An award of actual damages;

10. An award of statutory damages for Plaintiff and each Class member in the amount of $500.00 for each and every call that violated the TCPA;

11. A finding that Defendant acted willfully and/or knowingly and an award of treble damages, as provided by statute, of up to $1,500.00 for Plaintiff and each Class member for each and every call that violated the TCPA;

12. An order certifying this action to be a proper class action pursuant to the Federal Rules of Civil Procedure 23, establishing the appropriate Classes and any Sub-classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

13. Attorney's fees, litigation expenses and costs of suit; and

14. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, demands trial by jury.

Dated:   April 20, 2016

        Melanie Glasser, individually and on behalf of
        all others similarly situated,

        By: /s/ *Billy Howard*
        William Peerce Howard
        (FBN 0103330)
        Amanda J. Allen (FBN 0098226)
        The Consumer Protection Firm
        210-A South MacDill Ave.
        Tampa, Florida 33609
        (813) 500-1500
        Billy@TheConsumerProtectionFirm.com
        Amanda@TheConsumerProtectionFirm.com

        One of Plaintiffs' Attorneys