IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

| | |
|---|---|
| Melanie Glasser, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Hilton Grand Vacations Company, LLC<br><br>Defendant. | Case No. 8:16-cv-00952-JDW-UAM |

**DEFENDANT HILTON GRAND VACATIONS COMPANY, LLC'S
<u>FED. R. CIV. P. 12(b)(1) MOTION TO DISMISS COMPLAINT</u>
(Oral Argument Requested Per Local Rule 3.01(j))**

Pursuant to Fed. R. Civ. P. 12(b)(1) and Local Rule 3.01, Defendant Hilton Grand Vacations Company, LLC ("Defendant" or "Hilton"), by and through its undersigned counsel, hereby submits this Fed. R. Civ. P. 12(b)(1) Motion to Dismiss Complaint (the "Motion"). Hilton moves for dismissal of this action based on this Motion and all prior pleadings and proceedings in this action, as well as all matters of which the Court may take judicial notice.[1] In support of this Motion, Hilton states as follows:

---

[1] Concurrently with this Motion, Hilton is filing (i) a Motion to Dismiss for Improper Venue and/or to Transfer Venue, or Alternatively, to Strike Class Allegations, and (ii) a Notice of Filing Declaration of Cori Parnes in Support of Defendant's (1) Fed. R. Civ. P. 12(b)(1) Motion to Dismiss and (2) Motion to Dismiss for Improper Venue and/or to Transfer Venue, or Alternatively, to Strike Class Allegations.

I. **INTRODUCTION**

Plaintiff alleges that Defendant Hilton Grand Vacations Company, LLC ("Hilton") violated the Telephone Consumer Protection Act ("TCPA") by placing calls to her cellular phone. Through her lawsuit, Plaintiff seeks to recover potentially millions of dollars in penalties against Hilton for placing marketing calls to Plaintiff's cellular phone; calls she alleges resulted in alleged injury of "invading her privacy, wasting her time, and diminishing the battery life on her cellular telephone." Complaint, ¶ 18. Conveniently, Plaintiff neglects to disclose that she expressly consented to receive calls from Hilton when she knowingly and voluntarily enrolled in Hilton's HHonors Loyalty Program and registered her phone number with the Hilton Worldwide family of entities.

Hilton does not place "cold-calls." Rather, Hilton scrupulously utilizes targeted marketing to contact only those consumers who have registered their phone numbers with Hilton. Hilton also scrupulously adheres to the requirements of the TCPA, including *manually* dialing all cellular telephones. On multiple occasions, when Plaintiff enrolled in the HHonors program and later when she made reservations at Hilton properties using her HHonors identification number, Plaintiff expressly agreed to the HHonors Terms & Conditions, which among other things, state that Hilton uses the contact information Plaintiff provided "to send [HHonors members] newsletters, promotions and featured specials, and to conduct online surveys, sweepstakes, prize draws, and other contests via email, *telephone* or postal mail," and that as a "HHonors member, we may share your telephone number among our Portfolio of Brands, including Hilton Grand Vacations, for purposes of telemarketing." Thus, by participating in the HHonors Program, Plaintiff agreed to be contacted by Hilton for marketing purposes.

2

Having predicated her entire action on receiving (but not answering) a few calls that she explicitly consented to receive, Plaintiff lacks standing—even in her individual capacity—to pursue her claims under the TCPA. Plaintiff fails to plead a concrete injury sufficient to give this Court subject matter jurisdiction over this case pursuant to Federal Rule of Civil Procedure 12(b)(1).

## II.    LEGAL STANDARD

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "Subject matter jurisdiction must be affirmatively shown in the record before considering the merits of any case." *Ramirez v. Gonzalez*, No. 6:08-cv-20-0r1-19GJK, 2008 WL 190589, at *1 (M.D. Fla. Jan. 22, 2008) (citing *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005)). A party may contest the existence of subject matter jurisdiction over the claims alleged in a complaint via a motion pursuant to Federal Rule of Civil Procedure 12(b)(1). Rule 12(b)(1) motions challenging the subject matter jurisdiction of the court come in two forms, a "facial" attack motion and a "factual" attack motion. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). Facial challenges to subject matter jurisdiction are based solely on the allegations in the complaint. When considering such challenges, the court must, as with a Rule 12(b)(6) motion, take the complaint's allegations as true. *Id*. However, where a defendant raises a factual attack on subject matter jurisdiction, as in the instant motion, the district court may consider extrinsic evidence such as deposition testimony and affidavits. *Carmichael v. Kellogg, Brown & Root Services, Inc.*, 572 F.3d 1271 (11th Cir. 2009). Factual attacks on subject matter jurisdiction challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and

matters outside the pleadings, such as testimony and affidavits, are considered. *Beatty v. U.S. FDA, D.C.Ga.1997*, 12 F. Supp. 2d 1339.[2]

### III. STATEMENT OF FACTS

In this case, Plaintiff, on behalf of herself and a putative class of similarly situated individuals, sues Hilton for allegedly violating the TCPA by placing automated telemarketing calls to her cellular telephone without her consent, and purports to represent a class of similarly situated individuals. Complaint, prefatory paragraph, ¶ 37. Plaintiff further alleges that "[t]hroughout the month of February 2016, Hilton Vacations placed numerous telemarketing calls to Plaintiff's cellular telephone, promoting the sale of its promotional vacation packages." *Id.*, ¶ 13. In terms of her alleged "harm" suffered, Plaintiff alleges that Hilton "injured Plaintiff by violating her rights under the TCPA, by invading her privacy, by wasting her time, and by diminishing the battery life of her cellular telephone." *Id.*, ¶ 18. She coyly adds that her "wireless carrier charges Plaintiff to receive incoming calls," but conspicuously fails to allege that her carrier charges for each call received or whether she answered Hilton's calls thereby incurring a charge or whether her carrier charges for each call received, or more likely, a monthly fee for unlimited usage. *Id*.

In fact, Plaintiff fails to disclose that she is a member of Hilton's HHonors loyalty program, and that when she enrolled as an HHonors member in December 2010, she explicitly consented to be contacted by Hilton. *See* Declaration of Cori Parnes ("Parnes Decl.") (filed

---

[2] *See also McMaster v. U.S.*, 177 F.3d 936 (11th Cir. 1999) (certiorari denied 120 S.Ct. 940, 528 U.S. 1118, 145 L.Ed.2d 817); *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800 (11th Cir. 1993) (certiorari denied 114 S.Ct. 683, 510 U.S. 1040, 126 L.Ed.2d 651). The label placed on the motion (*i.e.,* "facial" or "factual") is not determinative. *See Troiano v. Supervisor of Elections in Palm Beach Cly., Fla.*, 382 F.3d 1276, 1278 n.2 (11th Cir. 2004).

concurrently with this Motion under a notice of filing at D.E. 17), ¶ 3.[3] Plaintiff has also been a frequent guest at Hilton brand properties, and has used her HHonors membership number when making multiple reservations. *Id*., ¶ 4. Hilton raises the issue of consent in this motion not for liability purposes, but to demonstrate the absence of injury. While Hilton maintains that Plaintiff consented to receive calls under the applicable provisions of the TCPA, that issue is not before the Court on this Motion. Rather, Plaintiff's agreement to Hilton's HHonors Terms & Conditions and Global Privacy Policy are sufficient for the Court to find that she lacks standing to pursue her claims.

When enrolling in the HHonors Program, all prospective applicants are required to navigate through a series of registration prompts where they provide certain information, create a password, and agree to the HHonors Terms and Conditions and Hilton's Global Privacy Policy. *Id*. On or about December 6, 2010, Plaintiff enrolled in the HHonors Program via Hilton's website. *Id*. During the process of enrolling, Plaintiff "clicked" a box that stated: "By creating this Hilton HHonors account, you agree to the HHonors Program Terms and Conditions, our Expiration Policy, our Global Privacy Statement." *Id*. The HHonors Program Terms and Conditions, the Expiration Policy, and the Global Privacy Statement were each hyperlinked and readily accessible and prominently displayed to Plaintiff. *Id*.

> The 2010 HHonors Terms & Conditions provided, in pertinent part, as follows:
>
> The following information forms the basis of participation in the Hilton HHonors™ guest Reward Program ("HHonors" or "Program"). . . . Your participation in this Program will be governed by these Terms and Conditions, and it is your responsibility to read and understand all of them.
>
> \*       \*       \*

---

[3] Hilton also vigorously disputes that it ever used an automatic dialer to call Plaintiff.

5

> We process your personal information In accordance with the <u>Hilton Global Privacy Policy</u> (the "'Privacy Policy").
>
> **In addition, by participating in the HHonors Program, we may collect additional personal information from you. We may also use and share your personal information in the ways described below, in addition to what is described in the <u>Privacy Policy</u>.** These Terms and Conditions supplement the Privacy Policy with respect to our processing of the personal information of HHonors Program Members. **IF YOU DO NOT AGREE TO THESE TERMS, you must elect not to join the HHonors Program**.
>
> \*   \*   \*
>
> **As a Member, you may receive additional communications from us, including HHonors statements, third party news and offers specifically for Members, and co-branded messages from our business partners**. Members of certain levels in certain states may also receive post-stay e-mails from us. You may change the communications you receive from us by logging onto your account online and managing your subscriptions, or by contacting us in the manner described in the <u>Privacy Policy</u>.
>
> We may modify these Terms and Conditions from time to time by posting the revised Terms and Conditions on our website. We may also modify the Privacy Policy from time to time as described in the <u>Privacy Policy</u>. Your continued participation In the HHonors Program following the posting of changes to these Terms and Conditions, or to the Privacy Policy, will indicate your acceptance of the changes.

*Id*., Exh. A (underlining in original indicating hyperlinks; bold emphasis added).

The Global Privacy Policy to which Plaintiff agreed in 2010 stated, in turn, that:

> **Use of Personal Information Collected About You**
>
> We use your personal information to provide the services you request from Hilton such as to facilitate: reservations; the purchase of a vacation package or timeshare; purchases from the Hilton To Home; the booking of airfares and rental cars; membership in the HHonors program; and other transactions. We also use the personal information to provide you with information about meeting and event planning and access to specific account information for administrative purposes. In addition, we may use the information to: improve Hilton's services; provide you with the expected level of hospitality; and ensure the site is of interest to you. **We also use details to send you newsletters, promotions and featured specials, and to conduct online surveys, sweepstakes, prize draws, and other contests via email, <u>telephone</u> or postal mail**. If you apply for employment with Hilton, we use the personal information you supply to process your job application.

6

*Id*. (emphasis added).

Finally, by using her HHonors membership to make several reservations over the course of 2013-2015, Plaintiff agreed to Hilton's updated Privacy Policy, which states:

> Hilton Worldwide Portfolio of Brands: We may share personal information with other companies within the Hilton Worldwide Portfolio of Brands, including Hilton Grand Vacations, that may jointly use the personal information for the purposes described above. Hilton Worldwide, Inc. is the party responsible for the management of the jointly used personal information.
>
> **Telemarketing: If you stay at a Hilton Hotel or are an HHonors member, we may share your telephone number among our Portfolio of Brands, including Hilton Grand Vacations, for purposes of telemarketing.** We may also receive your telephone number from our partners or from other sources, which we may use for telemarketing purposes.

*Id*., ¶ 4, Exh. B (emphasis added).

## IV. PLAINTIFF DOES NOT HAVE STANDING UNDER THE SUPREME COURT'S RECENT *SPOKEO* DECISION.

Plaintiff's Complaint should be dismissed in its entirety under the United States Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, in which the Court confirmed that a plaintiff must allege a real, "concrete" injury, as opposed to mere technical statutory violation, in order to have standing to sue under Article III of the United States Constitution. *See* 136 S. Ct. 1540, 1549 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."); *see also Khan v. Children's Nat'l Health Sys.*, No. CV TDC-15-2125, 2016 WL 2946165, at *7 (D. Md. May 19, 2016) (citing *Spokeo* in support of holding that plaintiff "has failed to connect the alleged statutory and common law violations to a concrete harm"); *Gubala v. Time Warner Cable, Inc.*, No. 15-cv-1078-pp at pp. 9-13 (E.D. Wis. June 17, 2016) (holding that plaintiff had not alleged any concrete injury despite alleging harm from statutorily elevated right created by Congress in the Cable Communications Policy Act requiring cable operators to destroy personally identifiable information once it is no longer necessary for the purpose for

7

which it was collected).[4]  In *Spokeo*, the Supreme Court explicitly addressed a situation where a bare alleged technical violation of a statute was insufficient to confer standing:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.

*Id.* at 1549.

In a thinly-veiled attempt to evade a potential adverse outcome in *Spokeo* (which was decided after Plaintiff filed her Complaint), Plaintiff half-heartedly alleges "actual harm" arising from the receipt of the alleged calls, including by "invading her privacy, by wasting her time, and by diminishing the battery life of her cellular telephone," as well as vaguely alluding to charges her wireless carrier assesses "to receive incoming calls." Complaint, ¶ 18.  Because Plaintiff does not allege that she actually answered the calls (she did not), that her carrier actually charged her for the alleged calls placed, or that she personally paid for any charges associated with the calls, Plaintiff has not pled any cognizable "actual injury."  The alleged "privacy invasion," or "time wasted" from allegedly receiving by not answering a few calls that Plaintiff explicitly consented to receiving is not the type of concrete injury that merits standing under Article III.  As the Supreme Court acknowledged in *Spokeo*, even in cases in which a plaintiff has a statutory right (granted by Congress in its role of "identifying and elevating intangible harms"), the plaintiff must allege a "concrete injury even in the context of a statutory violation." *Gubala*, No. 15-cv-1078-pp at 8 (citing *Spokeo*, 2016 WL 2842447 at 1549).

---

[4]  This order is not yet available on Westlaw. A copy of the order is attached hereto as **Exhibit 1**.

Here, even if Plaintiff had not expressly consented to being contacted by Hilton through her enrollment in the HHonors Program, her meager allegations of wasted time and battery life drainage would not constitute a concrete injury sufficient to confer standing.  Since she did not answer the calls, what time was wasted?  How was her battery affected?  What privacy was invaded?  Simply put, Plaintiff was not harmed in any way, and her lawsuit represents a mere "cash grab."  Additionally, Plaintiff's express written agreement to the HHonors Terms and Conditions and Hilton Global Privacy, each of which explicitly state that Plaintiff to being contacted by telephone by Hilton and its affiliates with marketing offers belies any possible "injury" Plaintiff may claim to have suffered.  *Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) ("In Florida and the federal circuits . . . clickwrap agreements are valid and enforceable contracts.") (citing *Salco Distributors, LLC v. iCode, Inc.*, 2006 WL 449156, at *2 (M.D. Fla. 2006)).

Through Hilton's counsel's meet and confer communications with Plaintiff's counsel, Hilton understands that Plaintiff disputes whether her enrollment in the HHonors Program constitutes consent under the TCPA.  While Hilton firmly maintains that Plaintiff thereby provided her explicit written consent to receive calls under the TCPA, that issue is not before the Court on this Motion.  Rather, Plaintiff's undeniable consent to be contacted by Hilton with marketing opportunities on her cellular telephone demonstrates that she has not suffered any concrete injury sufficient to maintain Article III standing and to provide this Court with subject matter jurisdiction over this controversy.

It also does not help Plaintiff that some members of the putative class she seeks to represent might actually be able to allege concrete injury sufficient to confer standing (though this is doubtful).  As the Supreme Court pointed out in *Spokeo*, "That a suit may be a class

action. . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Spokeo*, 136 S. Ct. at 1547, n.6 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40, n.20 (1976)) (internal citation omitted). Accordingly, Plaintiff's Complaint should be dismissed.

## V. CONCLUSION

For all of the foregoing reasons, Hilton respectfully requests, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, that this Court dismiss this action in its entirety and grant such other and further relief as justice may require.

### CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 3.01(g), on June 28, 2016, counsel for Hilton, Sandra J. Millor and David B. Farkas, conferred with Plaintiff's counsel, Tim J. Sostrin via telephone call, regarding the relief requested herein. Mr. Sostrin advised that Plaintiff opposes the relief requested herein.

### LOCAL RULE 3.1(j) REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 3.1(j), Middle District of Florida, Defendant requests oral argument on this Motion and estimates the time required for both sides to make their presentation to be one (1) hour.

Respectfully submitted,

/s/ Sandra J. Millor
Lawrence D. Silverman
Florida Bar No. 7160
Sandra J. Millor
Florida Bar No. 13742
Akerman LLP
Three Brickell City Centre
98 Southeast 7th Street, Suite 1100

Miami, Florida 33131
Tel.: 305.374.5600
Fax: 305.995.6949
E-mail: lawrence.silverman@akerman.com
E-mail: sandra.millor@akerman.com

*- and -*

Angela C. Agrusa
(*pro hac vice* pending)
Liner LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024
Tel. (310) 500-3500
Fax (310) 500-3501
E-mail: aagrusa@linerlaw.com

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF on this 28th day of June, 2016.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List via transmission of Notice of Electronic Filing generated by CM/ECF.

/s/ Sandra J. Millor
Attorney

**SERVICE LIST**

William Peerce Howard
 billy@theconsumerprotectionfirm.com
Amanda J. Allen
 amanda@theconsumerprotectionfirm.com
The Consumer Protection Firm
210-A South MacDill Ave.
Tampa, Florida 33609
Tel.: 813.500.1500

Tim J. Sostrin (admitted *pro hac vice*)
 tsostrin@keoghlaw.com
Keogh Law, Ltd.
55 West Monroe Street, Suite 3390
Chicago, Illinois 60603
Tel.: 312.374.3405