**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

**TAMPA DIVISION**

| | |
|---|---|
| Melanie Glasser, individually and on behalf of all others similarly situated, | Case No. 8:16-cv-00952- JDW-AAS |
| Plaintiff, | |
| vs. | |
| Hilton Grand Vacations Company, LLC | |
| Defendant. | |

**DEFENDANT HILTON GRAND VACATIONS COMPANY, LLC'S
MOTION TO DISMISS COMPLAINT**

Defendant Hilton Grand Vacations Company, LLC ("Defendant" or "Hilton"), by and through its undersigned counsel, hereby moves this Court to enter an order dismissing this case in its entirety with prejudice, as well as granting any further relief that the Court may deem just and proper. Hilton brings this Motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and Rule 3.01 of this Court's Local Rules.

Hilton further moves the Court to dismiss this action for improper venue based on a forum selection clause in the parties' contract requiring any dispute between the parties to be adjudicated in federal or state court in the State of Virginia, and to strike the class allegations pursuant to Federal Rule of Civil Procedure 12(f). Alternatively, Hilton moves the Court to transfer this action pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Eastern District of Virginia.

The requested relief is based on this Motion, the Memorandum of Legal Authority that follows, the Declaration of Cori Parnes, and all prior pleadings and proceedings in this action, as well as all matters of which the Court may take judicial notice.

## I.   <u>INTRODUCTION</u>

Plaintiff Melanie Glasser alleges that Hilton violated the Telephone Consumer Protection Act ("TCPA") by placing calls to her cellular phone. Through her lawsuit, Plaintiff seeks to recover potentially millions of dollars in penalties against Hilton for placing marketing calls to Plaintiff's cellular phone; calls she alleges resulted in alleged injury of "invading her privacy, wasting her time, and diminishing the battery life on her cellular telephone." Conveniently, Plaintiff neglects to disclose that she expressly consented to receive calls from Hilton when she knowingly and voluntarily enrolled in Hilton's HHonors Loyalty Program and registered her phone number with the Hilton Worldwide family of entities.

Hilton does not place "cold-calls." Rather, it scrupulously utilizes targeted marketing to contact *only* those consumers who have registered their phone numbers with Hilton. Hilton also scrupulously adheres to the requirements of the TCPA, including *manually* dialing all cellular telephones. Plaintiff is a long-time member of Hilton's HHonors loyalty program and a frequent guest at Hilton brand properties. On multiple occasions, when Plaintiff enrolled in the HHonors program and later when she made reservations at Hilton properties using her HHonors identification number, Plaintiff expressly agreed to the HHonors Terms & Conditions, which among other things, state that Hilton uses the contact information Plaintiff provided "to send [HHonors members] newsletters, promotions and featured specials, and to conduct online surveys, sweepstakes, prize draws, and other contests via email, *telephone* or postal mail," and that as a "HHonors member, we may share your telephone number among our Portfolio of Brands, including Hilton Grand Vacations, *for purposes of telemarketing*." Thus, by participating in the HHonors Program, Plaintiff agreed to be contacted by Hilton for marketing purposes.

Having predicated her entire action on receiving (but not answering) a few calls that she

explicitly consented to receive, Plaintiff lacks standing—even in her individual capacity—to pursue her claims under the TCPA. Plaintiff fails to plead a concrete injury sufficient to give this Court subject matter jurisdiction over this case pursuant to Federal Rule of Civil Procedure 12(b)(1), and therefore her complaint should be dismissed with prejudice.

In addition to her lack of standing, Plaintiff expressly consented to the forum selection and class action waiver clauses of the HHonors Terms and Conditions when she enrolled in the HHonors Program. Since those terms mandate that Plaintiff's only venue for adjudicating her claims is in Virginia and on an individual basis, this action should be dismissed and the class allegations stricken, or alternatively, the case should be transferred to the Eastern District of Virginia pursuant to the parties' contractual agreement.

## II.     STATEMENT OF FACTS

In this case, Plaintiff, on behalf of herself and a putative class of similarly situated individuals, sues Hilton for allegedly violating the TCPA by placing automated telemarketing calls to her cellular telephone without her consent, and purports to represent a class of similarly situated individuals. Complaint, prefatory paragraph, ¶ 37. Plaintiff further alleges that "[t]hroughout the month of February 2016, Hilton Vacations placed numerous telemarketing calls to Plaintiff's cellular telephone, promoting the sale of its promotional vacation packages." *Id.*, ¶ 13. In terms of her alleged "harm" suffered, Plaintiff alleges that Hilton "injured Plaintiff by violating her rights under the TCPA, by invading her privacy, by wasting her time, and by diminishing the battery life of her cellular telephone." *Id.*, ¶ 18. She coyly adds that her "wireless carrier charges Plaintiff to receive incoming calls," but conspicuously fails to allege that her carrier charges for each call received or that she answered Hilton's calls thereby incurring a charge. *Id.*

In fact, Plaintiff fails to disclose that she is a member of Hilton's HHonors loyalty program, and that when she enrolled as an HHonors member in December 2010, she explicitly consented to be contacted by Hilton. *See* Declaration of Cori Parnes ("Parnes Decl."), attached hereto, ¶ 3.[1] Plaintiff has also been a frequent guest at Hilton brand properties, and has used her HHonors membership number when making multiple reservations. *Id.*, ¶ 4.

Defendant Hilton Grand Vacations Company, LLC is an affiliate of Hilton HHonors Worldwide, LLC. Both Hilton Grand Vacations Company, LLC and Hilton HHonors Worldwide, LLC are subsidiaries of Park Hotels & Resorts Inc., which was formally known as Hilton Worldwide, Inc. The HHonors Program is used by all of Hilton's brands, and when enrolling in the HHonors Program, Hilton customers are informed that they are entering a contract with Hilton Grand Vacations Company, LLC, Hilton Worldwide, Inc., and all of its subsidiaries and affiliates. The 2010 HHonors Terms & Conditions, for example, which Plaintiff agreed to by "clicking" a check box indicating her assent to its terms, states:

> The following information forms the basis of participation in the Hilton HHonors® guest Reward Program ("HHonors"). These Terms and Conditions ("Terms and Conditions") are intended to protect the members of HHonors ("Members"), and Hilton HHonors Worldwide, LLC ("Hilton HHonors Worldwide, L.L.C." or "We"). Your participation in this Program will be governed by these Terms and Conditions, and it is your responsibility to read and understand all of them.

*Id.* at p. 2.

In her oppositions to Hilton's prior Rule 12(b) motions [Dkt. Nos. 25 & 26], Plaintiff contended that Hilton Grand Vacations Company, LLC, the entity she sued in this lawsuit, is not a party to the HHonors Terms & Conditions Agreement she entered. Plaintiff ignores, however, that Hilton HHonors Worldwide, LLC explicitly includes Hilton Worldwide, Inc., and all of its

---

[1]     Hilton also vigorously disputes that it ever used an automatic dialer to call Plaintiff.

subsidiaries and affiliates, including Hilton Grand Vacations Company, LLC. The HHonors

Terms and Conditions Agreement make this abundantly clear:

> **Hilton HHonors Worldwide, LLC is defined as Hilton Worldwide, Inc., its subsidiaries and affiliates**, the owners of the hotels within the Hilton Worldwide portfolio (as defined herein) and each of the foregoing entities' officers, directors, partners, employees and agents.

*Id*. at p. 2, ¶ 1 (emphasis added).[2] That Hilton Grand Vacations Company, LLC is a

subsidiary/affiliate of Hilton Worldwide, Inc. is also made clear throughout the HHonors Terms

and Conditions:

> Members may earn points (not miles) for Incidental charges at a hotel within the Hilton Worldwide portfolio during a Reward Stay, provided such charges are deemed eligible folio charges at Hilton®, Conrad® Hotels and Resorts, Doubletree®, Embassy Suites®, Hilton Garden Inn®, **Hilton Grand Vacations®**, and the Waldorf Astoria hotels.

*Id*. at p. 6, ¶ 15 (emphasis added).

> The HHonors Points and Fixed Miles Earnings Style option allows Members to earn 500 miles (or equivalent) for stays at Hilton, Conrad Hotels and Resorts, Doubletree, Embassy Suites, Hilton Garden Inn, **Hilton Grand Vacations** and Waldorf Astoria hotels, and 100 miles (or equivalent) for stays at Hampton Inn, Hampton Inn & Suites, Homewood Suites by Hilton. This earning option is not valid with Home2 Suites by Hilton.

*Id*. at p. 7, ¶ 2 (emphasis added). Hilton's Global Privacy Policy likewise includes the entire

Hilton family of brands, affiliates, and subsidiaries, including Hilton Grand Vacations:

> Service Providers: We rely on service providers to provide certain products and services, such as credit card billing, reservations services, and administering the HHonors, **Hilton Grand Vacations Club**, and The Hilton Club programs, providing services in connection with our websites . . .

*Id*. at p. 22 (emphasis added).

> If you submit an online "pre-application" for timeshare or if you submit a reservation request online, we may be required to ask you to provide your annual income range. **If you create an online account for members of Hilton Grand**

---

[2]     Hilton Worldwide Inc. recently changed its name to Park Hotels and Resorts, Inc. For purposes of clarity in this motion only, Hilton refers to this entity by its former name.

> **Vacations Club** and/or The. Hilton Club, **we may also ask you to provide your member number, the last four digits of your phone number, and a self-selected password**.

*Id.* at p. 25 (emphasis added).

Additionally, the website through which Plaintiff enrolled in the HHonors Program and entered into the HHonors Terms and Conditions clearly displayed (and continues to display) the Hilton Grand Vacations logo, indicating that Hilton Grand Vacations is an affiliate of Hilton Worldwide, Inc. *See* http://hhonors3.hilton.com/en/index.html.

When enrolling in the HHonors Program, all prospective applicants are required to navigate through a series of registration prompts where they provide certain information, create a password, and agree to the HHonors Terms and Conditions and Hilton's Global Privacy Policy. *Id.* On or about December 6, 2010, Plaintiff enrolled in the HHonors Program via Hilton's website. *Id.* During the process of enrolling, Plaintiff "clicked" a box that stated: "By creating this Hilton HHonors account, you agree to the HHonors Program Terms and Conditions, our Expiration Policy, our Global Privacy Statement." *Id.* The HHonors Program Terms and Conditions, the Expiration Policy, and the Global Privacy Statement were each hyperlinked and readily accessible and prominently displayed to Plaintiff. *Id.*

> The 2010 HHonors Terms & Conditions provided, in pertinent part, as follows:
>
> The following information forms the basis of participation in the Hilton HHonors™ guest Reward Program ("HHonors" or "Program"). . . . Your participation in this Program will be governed by these Terms and Conditions, and it is your responsibility to read and understand all of them.
>
> \*        \*        \*
>
> We process your personal information In accordance with the <u>Hilton Global Privacy Policy</u> (the "Privacy Policy").
>
> **In addition, by participating in the HHonors Program, we may collect additional personal information from you. We may also use and share your personal information in the ways described below, in addition to what is**

**described in the <u>Privacy Policy</u>.** These Terms and Conditions supplement the Privacy Policy with respect to our processing of the personal information of HHonors Program Members. **IF YOU DO NOT AGREE TO THESE TERMS, you must elect not to join the HHonors Program**.

      \*        \*        \*

**As a Member, you may receive additional communications from us, including HHonors statements, third party news and offers specifically for Members, and co-branded messages from our business partners**. Members of certain levels in certain states may also receive post-stay e-mails from us. You may change the communications you receive from us by logging onto your account online and managing your subscriptions, or by contacting us in the manner described in the <u>Privacy Policy</u>.

We may modify these Terms and Conditions from time to time by posting the revised Terms and Conditions on our website. We may also modify the Privacy Policy from time to time as described in the <u>Privacy Policy</u>. Your continued participation In the HHonors Program following the posting of changes to these Terms and Conditions, or to the Privacy Policy, will indicate your acceptance of the changes.

*Id*., Exh A. (Underlining in original indicating hyperlinks; bold emphasis added.) The Global

Privacy Policy to which Plaintiff agreed in 2010 stated, in turn, that:

**Use of Personal Information Collected About You**

We use your personal information to provide the services you request from Hilton such as to facilitate: reservations; the purchase of a vacation package or timeshare; purchases from the Hilton To Home; the booking of airfares and rental cars; membership in the HHonors program; and other transactions. We also use the personal information to provide you with information about meeting and event planning and access to specific account information for administrative purposes. In addition, we may use the information to: improve Hilton's services; provide you with the expected level of hospitality; and ensure the site is of interest to you. **We also use details to send you newsletters, promotions and featured specials, and to conduct online surveys, sweepstakes, prize draws, and other contests via email, <u>telephone</u> or postal mail**. If you apply for employment with Hilton, we use the personal information you supply to process your job application.

*Id*. (emphasis added).

      By using her HHonors membership to make several reservations over the course of 2013-

2015, Plaintiff agreed to Hilton's updated Privacy Policy, which states:

Hilton Worldwide Portfolio of Brands:  We may share personal information with other companies within the Hilton Worldwide Portfolio of Brands, including Hilton Grand Vacations, that may jointly use the personal information for the purposes described above. Hilton Worldwide, Inc. is the party responsible for the management of the jointly used personal information.

**Telemarketing:  If you stay at a Hilton Hotel or are an HHonors member, we may share your telephone number among our Portfolio of Brands, including Hilton Grand Vacations, for purposes of telemarketing.** We may also receive your telephone number from our partners or from other sources, which we may use for telemarketing purposes.

*Id*., ¶ 4, Exh. B (emphasis added).

Thus, Plaintiff explicitly agreed to be contacted by Hilton and all of its subsidiaries and affiliates by telephone for marketing purposes.

Additionally, Plaintiff agreed to the following forum selection and class waiver clause:

**The Hilton HHonors Program Terms and Conditions are governed by and are to be construed under the laws of the State of New York, U.S.A.**, without giving effect to any choice of law of conflict of law rules or provisions that would cause the application of any other state laws. **Claims may not be resolved through any form of class action. By participating in the HHonors Program, Members consent that venue for all suits will be in the Eastern District of Virginia or, if there's no federal jurisdiction, venue will be in Fairfax County, Virginia.**

Parnes Decl., ¶ 3, Exh. A at ¶ 2 (emphasis added).

Pursuant to the parties' agreement then, her claims must be adjudicated in Virginia and on an individual basis.

## III.   LEGAL STANDARD

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "Subject matter jurisdiction must be affirmatively shown in the record before considering the merits of any case." *Ramirez v. Gonzalez*, No. 6:08-cv-20-0r1-19GJK, 2008 WL 190589, at *1 (M.D. Fla. Jan. 22, 2008) (*citing*

*Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005)). A party may contest the existence of subject matter jurisdiction over the claims alleged in a complaint via a motion pursuant to Federal Rule of Civil Procedure 12(b)(1). Rule 12(b)(1) motions challenging the subject matter jurisdiction of the court come in two forms, a "facial" attack motion and a "factual" attack motion. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). Facial challenges to subject matter jurisdiction are based solely on the allegations in the complaint. When considering such challenges, the court must, as with a Rule 12(b)(6) motion, take the complaint's allegations as true. *Id*. However, where a defendant raises a factual attack on subject matter jurisdiction, as in the instant motion, the district court may consider extrinsic evidence such as deposition testimony and affidavits. *Carmichael v. Kellogg, Brown & Root Services, Inc.*, 572 F.3d 1271 (11th Cir. 2009). Factual attacks on subject matter jurisdiction challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered. *Beatty v. U.S. FDA, D.C.Ga.1997*, 12 F. Supp. 2d 1339.[3]

## IV.   ARGUMENT

### A.   Plaintiff Does Not Have Standing Under The Supreme Court's Recent *Spokeo* Decision.

Plaintiffs Complaint should be dismissed in its entirety under the United States Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, in which the Court confirmed that a plaintiff must allege a real, "concrete" injury, as opposed to mere technical statutory violation, in order to

---

[3]   *See also McMaster v. U.S.*, 177 F.3d 936 (11th Cir. 1999) certiorari denied 120 S.Ct. 940, 528 U.S. 1118, 145 L.Ed.2d 817; *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800 (11th Cir. 1993) certiorari denied 114 S.Ct. 683, 510 U.S. 1040, 126 L.Ed.2d 651. The label placed on the motion (i.e., "facial" or "factual") is not determinative. *See Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F.3d 1276, 1278 n.2 (11th Cir. 2004).

have standing to sue under Article III of the United States Constitution. *See* 136 S. Ct. 1540, 1549 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."); *see also Khan v. Children's Nat'l Health Sys.*, No. CV TDC-15-2125, 2016 WL 2946165, at *7 (D. Md. May 19, 2016) (citing *Spokeo* in support of holding that plaintiff "has failed to connect the alleged statutory and common law violations to a concrete harm"); *Gubala v. Time Warner Cable, Inc.*, No. 15-CV-1078-PP, 2016 WL 3390415, at *4 (E.D. Wis. June 17, 2016) (holding that plaintiff had not alleged any concrete injury despite alleging harm from statutorily elevated right created by Congress in the Cable Communications Policy Act requiring cable operators to destroy personally identifiable information once it is no longer necessary for the purpose for which it was collected).[4]

In *Spokeo*, the Supreme Court explicitly addressed a situation where a bare alleged technical violation of a statute was insufficient to confer standing:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.

*Id.* at 1549.

In a thinly-veiled attempt to evade a potential adverse outcome in *Spokeo* (which was decided after Plaintiff filed her Complaint), Plaintiff half-heartedly alleges "actual harm" arising from the receipt of the alleged calls, including by "invading her privacy, by wasting her time, and by diminishing the battery life of her cellular telephone," as well as vaguely alluding to

---

[4]       *See also Braitberg v. Charter Commc'ns, Inc.*, No. 14-1737, 2016 WL 4698283, at *5 (8th Cir. Sept. 8, 2016); *Hancock v. Urban Outfitters, Inc.*, No. 14-7047, 2016 WL 3996710, at *3 (D.C. Cir. July 26, 2016); *Lee v. Verizon Commc'ns, Inc.*, No. 14-10553, 2016 WL 4926159, at *2 (5th Cir. Sept. 15, 2016).

charges her wireless carrier assesses "to receive incoming calls." Complaint, ¶ 18. Because Plaintiff does not allege that she actually answered the calls (she did not), that her carrier actually charged her for the alleged calls placed, or that she personally paid for any charges associated with the calls, Plaintiff has not pled any cognizable "actual injury." The alleged "privacy invasion," or "time wasted" from allegedly receiving by not answering a few calls that Plaintiff explicitly consented to receiving is not the type of concrete injury that merits standing under Article III. As the Supreme Court acknowledged in *Spokeo*, even in cases in which a plaintiff has a statutory right (granted by Congress in its role of "identifying and elevating intangible harms"), the plaintiff must allege a "concrete injury even in the context of a statutory violation." *Gubala*, 2016 WL 3390415, at 8 (*citing Spokeo*, 136 S. Ct. at 1549).

In her opposition to Hilton's prior motion to dismiss, Plaintiff argued that she has suffered a concrete injury in three respects: (1) that her "TCPA rights" were violated; (2) that Hilton "occupied her cellular telephone line and device; and (3) that Hilton "invaded her privacy." None of these alleged "harms" suffice to confer Plaintiff standing to maintain this suit.

Plaintiff's first argument regarding her alleged "injury" boils down to "statute X requires Y; Defendant did not do [or did do] Y; thus, Defendant violated statute X, which caused [her] injury." *Zia v. Citimortgage, Inc. et al.*, Case No. 15-cv-23026, Dkt. No 80 (S.D. Fla. Sept. 26, 2016).[5] But "whatever the veracity of this principle may have been prior to Spokeo, the principle has been rendered a nullity in its wake." *Id.* "[T]he deprivation of a right created by statute must be accompanied by some concrete interest that is affected by the deprivation; a holding that the statutory violation is along sufficient to establish standing would impermissibly conflate the concepts of statutory and constitutional standing." *Id.* (*citing Lee*, 2016 WL 4926159, at *1-2).

---

[5]     The *Zia* decision is not yet available on Westlaw and is therefore attached hereto as Exhibit 1.

Plaintiff invokes the unpublished Eleventh Circuit decision in C*hurch v. Accretive Health Inc.*, — Fed. App'x —, 2016 WL 3611543 (11th Cir. July 6, 2016), pointing to its holding that the plaintiff in that case had standing based on the defendant's failure to provide the requisite disclosures under the Federal Debt Collection Practices Act ("FDCPA"). But *Church* is "one of the many cases involving so-called 'informational standing,' where a plaintiff has standing because he seeks to enforce a statutory disclosure requirement." *Zia*, at 11. It has little application here, beyond the general principle that a violation of one's *substantive* rights under a statute may suffice to confer standing. But here, Plaintiff cannot allege a violation of any substantive rights. Even if the TCPA confers the substantive right to be free from unwanted calls from an automatic dialer (and Hilton does not use an ATDS to call cellular phones), Plaintiff explicitly agreed to be contacted by Hilton for marketing purposes. She cannot then rest on a bare *procedural* violation of the TCPA to establish standing. Plaintiff claims that "the right to be left alone under the TCPA is not 'procedural' in any sense." Dkt. No. 26 at 11. But in the context of her express agreement to be called by Hilton, her claims are precisely "procedural." She claims that she did not agree to be dialed by an autodialer. But "**Plaintiff would have been no better off had [Hilton] dialed her telephone number manually**.[6] 'A plaintiff who would have been no better off had the defendant refrained from the unlawful acts of which the plaintiff is complaining does not have standing under Article III of the Constitution to challenge those acts in a suit in federal court.'" *Romero v. Dep't Stores Nat'l Bank*, No. 15-CV-193-CAB-MDD, 2016 WL 4184099, at *6 (S.D. Cal. Aug. 5, 2016) (emphasis added) (*quoting McNamara v. City of Chicago*, 138 F.3d 1219, 1221 (7th Cir.1998)).

---

[6]     Once again, Hilton stresses that it did not place calls to Plaintiff using an autodialer. Hilton scrupulously adheres to the TCPA and does not place automatically dialed calls to cellular telephones.

*Romero* is instructive. There, the plaintiff alleged that the defendant had placed more than 290 calls to her cell phone using an automatic dialing system (ATDS), although the plaintiff actually answered only two of those calls. The plaintiff argued that she had standing because she suffered the exact harm that Congress intended to eliminate with the TCPA —unwanted calls to her cell phone and violation of her privacy. The court, however, squarely rejected this argument. In particular, the court held that regardless of Congress's reasons for enacting the TCPA, "one singular call, viewed in isolation and without consideration of the purposes of the call, does not cause any injury that is traceable to the conduct for which the TCPA created a private right of action, namely the use of an ATDS to call a cell phone." *Id*. The court further noted:

> **That Defendants' placed a call to Plaintiff's cell phone using an ATDS is merely a <u>procedural violation</u>**. For Plaintiff to have suffered "lost time, aggravation, and distress," she must, at the very least, have been aware of the call when it occurred. Accordingly, because Plaintiff has not, and likely could not, present evidence of an injury in fact as a result of calls placed by Defendants to Plaintiff's cell phone of which Plaintiff was not aware, Plaintiff lacks standing to assert a claim for a TCPA violation based on any of these calls.

*Id*.

Similarly, Plaintiff cannot allege that she was injured by a bare procedural violation of the TCPA (or by "occupation of her phone line" or" invasion of privacy"), since she explicitly agreed to receive phone calls from Hilton.

Likewise, in *Stoops v. Wells Fargo Bank, N.A.*, No. CV 3:15-83, 2016 WL 3566266, at *11 (W.D. Pa. June 24, 2016), a district court granted the defendant summary judgment because the plaintiff lacked both constitutional and prudential standing. The plaintiff in *Stoops*, far from being "disturbed" by unwanted calls, actually purchased wireless phones with numbers from economically depressed areas out-of-state, hoping to receive misdirected debt collection calls, meant for the former owners of those numbers, so that she could bring TCPA claims regarding

those calls.   Her interests therefore fell outside the statute's protected zone of interests—"privacy, peace, and quiet"—and she lacked standing. *Id.*

Just as in *Stoops*, Plaintiff's claims to standing must be viewed in the context of her affirmative agreement to be contacted by Hilton and its affiliates and subsidiaries by telephone for marketing purposes. Having explicitly agreed to being contacted on her cellular phone, she cannot now claim injury from receiving (but not answering) a few calls from Hilton. Plaintiff complains that Hilton is confusing the issue of consent with standing. *See* Dkt. No. 26 at 5-6. This is not true. Hilton raises Plaintiff's **express** agreement to be contacted for marketing purposes to focus on the issue of whether Plaintiff has alleged a "concrete injury." Having agreed to receive calls from Hilton, what possible injury could plaintiff have suffered? Even if Plaintiff's agreement in the HHonors Terms & Conditions does not suffice to establish consent under the TCPA (under a heavily disputed recent FCC ruling that is subject to a challenge in the D.C. Circuit)—and Hilton maintains that Plaintiff did in fact consent—the facts of her relationship with Hilton and her agreement to receive marketing calls from Hilton belie any claims to injury beyond a mere alleged procedural violation of the statute.

Even if Plaintiff had not expressly consented to being contacted by Hilton through her enrollment in the HHonors Program, her meager allegations of wasted time and battery life drainage would not constitute a concrete injury sufficient to confer standing. Since she did not answer the calls, what time was wasted? How was her battery affected? What privacy was invaded? Simply put, Plaintiff was not harmed in any way, and her lawsuit represents a mere "cash grab." Plaintiff's express written agreement to the HHonors Terms and Conditions and Hilton Global Privacy, each of which explicitly state that Plaintiff consented to being contacted by telephone by Hilton and its affiliates with marketing offers belies any possible "injury"

Plaintiff may claim to have suffered. *Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) ("In Florida and the federal circuits . . . clickwrap agreements are valid and enforceable contracts.") (*citing Salco Distributors, LLC v. iCode, Inc.*, 2006 WL 449156, at *2 (M.D. Fla. 2006)).[7] Accordingly, Plaintiff's Complaint should be dismissed.

> **B.      This Case Should Be Dismissed For Improper Venue Because The Parties Are Bound By Their Forum Selection Clause.**

A motion to dismiss premised upon a choice of forum clause is properly brought pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. *See Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir. 1998). On a motion to dismiss based on improper venue, the Plaintiff has the burden of showing that venue in the forum is proper. *See Wai v. Rainbow Holdings*, 315 F.Supp.2d 1261, 1268 (S.D. Fla. 2004).

It is well settled that parties to a contract may bargain in advance to select the forum in which their disputes will be adjudicated. *See M/S Breman v. Zapota Off-Shore Co.*, 407 U.S. 1, 12-14 (1972). Forum selection clauses are presumed valid and "should be enforced unless a strong showing is made that enforcement would be unreasonable and unjust or that the clause was invalid for such reasons as fraud or overreaching." *BP Products North America, Inc. v. Super Stop 79, Inc.*, 464 F.Supp.1253, 1256 (S.D. Fla. 2006) (Cooke, J.). Forum selection clauses found in form or adhesion contracts are similarly valid and enforceable. *See, e.g., Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991) (forum selection clause in adhesion contract is

---

[7]      It also does not help Plaintiff that some members of the putative class she seeks to represent might actually be able to allege concrete injury sufficient to confer standing (though this is doubtful). As the Supreme Court pointed out in *Spokeo*, "That a suit may be a class action. . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Spokeo*, 136 S. Ct. at 1547, n.6 *quoting Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40, n.20 (1976) (internal citation omitted).

not unreasonable, especially where the defendant has a special interest in limiting the fora in which it potentially could be subject to suit).

By enrolling in the HHonors Program and by clicking the box agreeing to the HHonors Terms and Conditions, Plaintiff agreed to the forum selection clause stated therein. *See Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) ("In Florida and the federal circuits . . . clickwrap agreements are valid and enforceable contracts.") (*citing Salco Distributors, LLC v. iCode, Inc.*, 2006 WL 449156, at *2 (M.D. Fla. 2006)). In her opposition to Hilton's prior motion to dismiss, Plaintiff argued that Hilton had failed to present competent evidence that Plaintiff entered into an agreement with Hilton. On the contrary, the Parnes Declaration establishes that on December 6, 2010, Plaintiff enrolled in the HHonors Program and accepted the Terms & Conditions and Privacy Policy. That evidence is competent because it comes from the personal knowledge of someone "familiar with Hilton's record-keeping processes and systems" and is based on her review of Hilton's records, including Plaintiff's HHonors membership history and reservation history. Parnes Decl., ¶¶ 2-3.

Forum selection clauses like the one at bar have been repeatedly and consistently upheld and enforced. In *Carnival Cruise Lines*, the Supreme Court upheld a forum-selection clause on the back of a cruise ticket purchased by a consumer who was later injured aboard the vessel. 499 U.S. 585. The Supreme Court rejected the lower court's finding that the plaintiffs were "physically and financially incapable of pursuing [their] litigation in Florida." *Id*. at 594, 111 S.Ct. 1522. The Court rejected the lower court's "determination that a non-negotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining," and found that the plaintiffs had not met the "heavy burden of proof required to set aside the clause on grounds of inconvenience." *Id*. at 593, 595, 111 S.Ct. 1522 (internal

citation omitted).

The Supreme Court further explained that forum selection clauses "are subject to judicial scrutiny for fundamental fairness." *Id*. at 594, 111 S.Ct. 1522. A forum-selection clause can only be invalidated on a showing of a "bad faith motive" where the forum was chosen "as a means of discouraging [parties] from pursuing legitimate claims." *Id*. at 595, 111 S.Ct. 1522. After noting that Florida was the principal place of business for the cruise line and that many cruises departed from that location, the Court concluded that there was no evidence of a bad-faith motive.

Similarly, in *Segal*, 763 F. Supp. 2d at 1369, the court upheld a forum selection clause nearly identical to the one at bar. There, individuals who had signed up to sell on Amazon's online marketplace brought suit alleging that Amazon had improperly refused to disburse funds to them and blocked their listings. *Id*. The sellers had entered into a "Participation Agreement," via a click-through or "click-wrap" agreement, which terms were included via hyperlink. The court upheld and enforced the Participation Agreement's forum selection clause, noting that "[t]he Plaintiffs' admitted failure to read the Participation Agreement does not excuse compliance with its terms." *Id*.

Plaintiff does not contend in her Complaint that Hilton's HHonors Terms and Conditions or its forum selection clause are unenforceable, but should she choose to make that argument in opposition to this Motion, the burden will be on Plaintiff to show unenforceability, and the burden is a heavy one. *See, e.g. M/S Bremen v*, 407 U.S. at 10 (internal quotation omitted) (listing factors a plaintiff must overcome to invalidate a forum selection clause); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 26, 108 S. Ct. 2239, 2242, 101 L. Ed. 2d 22 (1988) (Kennedy, J., concurring) ("[A] valid forum selection clause is given controlling weight in all but the most exceptional cases"); *Mitsui & Co (USA) v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997) ("The

burden of proving unreasonableness is a heavy one, carried only by a showing that the clause results from fraud or overreaching, that it violates a strong public policy, or that enforcement of the clause deprives the plaintiff of his day in court"). Courts around the country have held that nearly identical forum selection clauses in nearly identical "clickwrap" agreements are valid and enforceable. *See, e.g., Universal Grading Service v. eBay, Inc.*, 2009 WL 2029796, at *11 (E.D.N.Y. June 10, 2009) (enforcing forum selection clause in clickwrap agreement); *Tricome v. Ebay, Inc.*, 2009 WL 3365873 (E.D. Pa. Oct. 19, 2009); *Novak v. Overture Servs., Inc.*, 309 F.Supp.2d 446, 451 (E.D.N.Y. 2004); *Person v. Google*, 457 F.Supp.2d 488, 493 (S.D.N.Y. 2006); *Feldman v. Google*, 2007 WL 966011 (E.D. Pa. March 29, 2007); *Appliance Zone, LLC v. Nextag, Inc.*, 2009 WL 5200572, *4 (S.D. Ind. Dec. 22, 2009).

Plaintiff will not be deprived of her day in court if she has to re-file this case in Virginia, and the forum selection clause does not violate public policy. In fact, enforcing the parties' chosen forum supports the Florida's public policy of protecting freedom of contract and enforcement of contractual obligations. *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (recognizing strong public policy favoring enforcement of contractual obligations); *Walls v. Quick & Reilly, Inc.*, 824 So.2d 1016, 1018 (Fla. 5th DCA 2002) (recognizing Florida's strong public policy protecting freedom of contract). For these reasons, the Court should dismiss this action under Fed.R.Civ.P. 12(b)(3).

### C.     Alternatively, This Case Should Be Transferred To The Eastern District of Virginia.

If the Court decides that dismissal is not warranted, this case should be transferred to the United States District Court for the Eastern District of Virginia. Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought." 28

U.S.C. § 1404(a); *Windmere Corp. v. Remington Prod.*, 617 F.Supp. 8, 10 (S.D. Fla. 1985).

Under a Section 1404(a) analysis, a choice of forum clause is "'a significant factor that figures

centrally in the district court's calculus.'" *P & S Business Machines, Inc. v. Canon USA, Inc.*, 331

F.3d 804, 807 (11th Cir.2003) (*quoting Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108

S.Ct. 2239 (1988)). "[W]hile other factors might conceivably militate against a transfer . . . the

venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors."

*Id.* (citation omitted). "By enforcing the contractual forum, the Court is not attempting to limit

the plaintiff's usual right to choose its forum, but is enforcing the forum that the plaintiff has

already chosen." *Id.* Under federal law, forum-selection clauses are "prima facie valid" and will

be enforced unless shown to be "unreasonable under the circumstances." *Bremen*, 407 U.S.at 10.

Here, the parties entered into a clear and unambiguous forum-selection clause designating

Virginia as the exclusive forum for disputes between them. In the interest of justice, this Court

should enforce the parties' previously established choice of forum.[8]

---

[8]    In deciding whether to transfer a case, the Court must weigh several factors, including convenience, cost, judicial economy, and the expedition of discovery and trial processes. *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). A forum-selection clause, however, is "a significant factor that figures centrally in the District Court's calculus." *Stewart Org.*, 487 U.S., at 29. Indeed, "the Eleventh Circuit gives nearly conclusive weight to such a clause in deciding a § 1404(a) transfer motion." *General Pump & Well, Inc. v. Laibe Supply Corp.*, 2007 WL 4592103, *4 (S.D. Ga. Dec. 28, 2007) (emphasis added) (*citing* I*n re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989)), and also stating that "while other factors might 'conceivably' militate against a transfer . . . the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors"); s*ee also P&S Bus. Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003). And, as discussed in the preceding section above, courts in this District and throughout the Eleventh Circuit recognize that parties opposing enforcement of a forum selection clause bear a heavy burden. To the extent Plaintiff argues in opposition that the 1404(a) factors militate against transfer, Hilton reserves the right to reply.

If this action is not dismissed for improper venue, the Court should transfer this case to the Eastern District of Virginia because Plaintiff, a registered HHonors member, assented to the forum selection and choice of law provisions contained in the HHonors Terms and Conditions.

**D.    The Class Action Waiver Clause of the HHonors Terms and Conditions Should Be Enforced.**

Like the forum selection clause, the class action waiver clause in paragraph 2 of the HHonors Terms and Conditions should be given effect, and Plaintiff's class allegations (Complaint ¶¶ 35-47), and her requests for classwide relief should be stricken. Plaintiff entered into a valid contract by enrolling in the HHonors Program, and thereby manifested her assent to the class action waiver clause in the HHonors Terms and Conditions. *See Segal*, 763 F. Supp. at 1369 (holding "Click-wrap" or "Click-through" agreements enforceable under Florida law).

No public policy concerns exist here that would justify voiding the class action waiver clause. [9] "Florida courts enforce contractual choice-of-law provisions unless enforcing the chosen forum's law would contravene strong Florida public policy." *Lamb v. Lamb*, 154 So. 3d 465, 467 (Fla. Dist. Ct. App. 2015). Under Florida law, a contractual provision that defeats the purpose of a remedial statute violates public policy and is thus unenforceable. *Lacey v. Healthcare & Ret. Corp. of Am.*, 918 So.2d 333, 334 (Fla. 4th DCA 2005); *see also Shotts v. OP Winter Haven, Inc.*, 86 So.3d 456, 474 (Fla. 2011); *Gessa v. Manor Care of Fla., Inc.*, 86 So.3d 484, 492–93 (Fla. 2011). Plaintiff could only maintain this argument if a class action were the only method by which her TCPA claims could be vindicated. On the contrary, the drafters of the

---

[9]    Notably, Plaintiff raised no such arguments in her opposition to Hilton's prior motion to dismiss. *See* Dkt. No. 25 at 10-11. Rather, Plaintiff cited inapposite authorities dealing with motions to strike class allegations that were not premised on the enforcement of a valid class waiver contractual agreement, but rather efforts to challenge the propriety of class treatment at the pleading stage. Those cases have no applicability here.

TCPA explicitly indicated that such claims were appropriately resolved on an individual basis in small claims court. *See, e.g., Murphey v. Lanier*, 204 F.3d 911, 913 (9th Cir. 2000) abrogated on other grounds by *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012) (TCPA claims should be treated as "small claims best resolved in state courts"); *Smith v. Microsoft*, 7 F.R.D. 464, 472 (S.D. Cal. 2014) ("In light of the Court's concerns, the Court finds that a class action is not the best vehicle for the resolution of this suit. Only the nonexistence of related lawsuits favors certification, and the Court believes this factor to be a weak one. On the other hand, the Court has overwhelming concerns about the impossibility of procuring necessary evidence and the manageability of this suit. The Court therefore finds that Plaintiff has failed to satisfy the superiority requirement, rendering certification of the proposed class inappropriate."); *Freedman v. Advanced Wireless Cellular Commc'ns., Inc.*, No. SOM-L-611-02, 2005 WL 2122304, at *2 (N.J. Super. Ct. June 24, 2005) (vacating TCPA class certification, noting significant legislative history evidencing that class actions were not intended under the TCPA); *Levine v. 9 Net Ave., Inc.*, No. A-1107-00T1, 2001 WL 34013297, at *1 (N.J. Super. App. Div. June 7, 2001) ("The drafters [of the TCPA] recognized that damages from a single violation would ordinarily amount only to a few pennies worth of ink and paper usage, and so believed that the $500 minimum damage award would be sufficient to motivate private redress of a consumer's grievance through a relatively simple small claims court proceeding, without an attorney."); *Forman v. Data Transfer, Inc.*,164 F.R.D. 400, 404-05 (E.D. Pa. 1995) (the TCPA is designed to provide adequate incentive for an individual plaintiff to bring suit - "[a] class action would be inconsistent with the specific and personal remedy provided by Congress to address the minor nuisance of unsolicited facsimile advertisements.").

Likewise here, enforcement of the class action waiver clause Plaintiff agreed to will not deprive her of her day in court and will not in any way defeat the purpose of the TCPA. Indeed, Plaintiff will be able to maintain her claims on an individual basis in small claims court or in state court, fora where her lack of Article III standing would not matter. Thus, under Florida law, both the choice of law and class action waiver provisions of the HHonors Terms and Conditions should be given effect.

Under New York law, in turn, the class action waiver provision is enforceable. *See, e.g., Ranieri v. Bell Atlantic Mobile*, 304 A.D.2d 353, 354, 759 N.Y.S.2d 448, 449 (2003) (rejecting claim that class action waiver is unconscionable based on strong public policy favoring arbitration and "absence of a commensurate policy favoring class actions"); *Tsadilas v. Providian Nat. Bank*, 13 A.D.3d 190, 191, 786 N.Y.S.2d 478, 480 (2004) ("The arbitration provision is enforceable even though it waives plaintiff's right to bring a class action."); *Hayes v. Cty. Bank*, 26 A.D.3d 465, 467, 811 N.Y.S.2d 741, 743 (2006) (the fact that the arbitration agreements effectively preclude her from pursuing a class action does not alone render them substantively unconscionable); *Bar-Ayal v. Time Warner Cable Inc.*, No. 03 CV 9905 KMW, 2006 WL 2990032, at *11 (S.D.N.Y. Oct. 16, 2006) (holding arbitration agreement in click-wrap computer software contract enforceable); *Harris v. Shearson Hayden Stone, Inc.*, 82 A.D.2d 87 (1st Dep't 1981), aff'd, 56 N.Y.2d 627 (1982) (brokerage customers must arbitrate on an individual basis); *see also Cap Gemini Ernst & Young U.S. LLC v. Nackel*, No. 02 CVI 6872 (DLC), 2004 WL 569554 (S.D.N.Y. March 23, 2004), aff'd, 98 Fed. Appx. 65 (2d Cir. 2004) (employee claims ordered arbitrated on an individual basis); *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 665 n. 7 (S.D.N.Y. 1997), aff'd, 173 F.3d 844 (2d Cir. 1999) (employment discrimination plaintiff claims "must be pursued in non-class arbitration").

## V. <u>CONCLUSION</u>

For all of the foregoing reasons, Hilton respectfully requests, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, that this Court dismiss the above-captioned action in its entirety and grant such other and further relief as justice may require.

Further, Hilton respectfully requests that the Court (1) dismiss this action for improper venue, or in the alternative, transfer venue to the Eastern District of Virginia, and/or (2) strike the class allegations of the Complaint.

Dated: September 28, 2016                            Respectfully submitted,

*/s/ Sandra J. Millor*
Lawrence D. Silverman (FBN 7160)
Sandra J. Millor (FBN 13742)
Akerman LLP
Three Brickell City Centre
98 Southeast 7th Street, Suite 1100
Miami, Florida 33131
Tel.: 305.374.5600
Fax: 305.995.6949
E-mail: lawrence.silverman@akerman.com
E-mail: sandra.millor@akerman.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF on this 28th day of September, 2016.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List via transmission of Notice of Electronic Filing generated by CM/ECF.

/s/ Sandra J. Millor
Attorney

## SERVICE LIST

William Peerce Howard
  billy@theconsumerprotectionfirm.com
Amanda J. Allen
  amanda@theconsumerprotectionfirm.com
The Consumer Protection Firm
210-A South MacDill Ave.
Tampa, Florida 33609
Tel.: 813.500.1500

Tim J. Sostrin (admitted *pro hac vice*)
  tsostrin@keoghlaw.com
Keogh Law, Ltd.
55 West Monroe Street, Suite 3390
Chicago, Illinois 60603
Tel.: 312.374.3405