IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| Melanie Glasser, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Hilton Grand Vacations Company, LLC<br><br>Defendant. | Case No. 8:16-cv-00952-JDW-UAM |

**DECLARATION OF DAVID B. FARKAS IN SUPPORT OF HILTON'S MOTION TO DISQUALIFY PLAINTIFF'S EXPERT WITNESS, RANDALL A. SNYDER, AND TO DISQUALIFY PLAINTIFF'S COUNSEL OF RECORD**

I, DAVID B. FARKAS, declare as follows:

1. I am an attorney with Liner LLP ("Liner"), counsel of record for Defendant Hilton Grand Vacations Company, LLC ("Hilton"). I submit this declaration in support of Hilton's motion to disqualify plaintiff's expert, Randall A. Snyder, and to disqualify plaintiff's counsel of record. I have personal knowledge of the facts set forth herein, and if called as a witness, could and would testify competently to such facts under oath.

2. Attached as **Exhibit A** is a true and correct copy of the Complaint filed on March 9, 2012 in the Southern District of California in *Connelly et al. v. Hilton Grand Vacations Company, LLC*, Case No. 12-cv-0599 (2012) ("*Connelly*") [Dkt. No. 1].

3. In or around August 2012, Hilton retained Randall A. Snyder as a consulting expert in *Connelly*. During his retention, Mr. Snyder spent many hours reviewing materials selected by and provided to him by Hilton's counsel. Mr. Snyder worked closely with Hilton and Liner to develop case strategies, prepare for and guide Hilton's defenses, review Hilton's policies and procedures relating to its compliance with the TCPA, discuss and review Hilton's internal telemarketing practices and systems, including but not limited to its dialing systems, and ultimately, prepare a report delineating his opinion on whether Hilton was in compliance with the TCPA. Mr. Snyder publicly lists his retention in *Connelly* on his CV located at http://www.wrsvs.com/uploads/RSnyder_Case_List.pdf (last accessed on April 24, 2017).

4. On July 12, 2013, Mr. Snyder was designated as Hilton's expert in *Connelly*. A true and correct copy of Hilton's expert designations in *Connelly* is attached hereto as **Exhibit B**. In August 2013, Mr. Snyder prepared a report for Hilton in which he stated he was retained to "provide [his] expert opinions relating to technology described within the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA") and the claims by Plaintiff that [Hilton] maintains an Automatic Telephone Dialing System ("ATDS") as defined in the TCPA." With regard to Hilton's telemarketing practices and compliance with the TCPA, Mr. Snyder concluded as follows: "I have personally never studied, analyzed or reviewed a call center operation that is as diligent as Hilton to ensure that cellular numbers are not called in any type of automated fashion."

5. On October 1, 2013, Mr. Snyder's deposition was taken in *Connelly*. Prior to the deposition, Mr. Snyder conferred numerous times with Liner attorneys to prepare for the same. During their many conferences, Hilton's counsel and Mr. Snyder discussed Hilton's defenses against the alleged TCPA violations, shared ideas on how Mr. Snyder's prior reports would be

attacked, shared ideas on the strengths of Hilton's practices, discussed Hilton's telemarketing systems and campaigns in great detail, discussed strengths and weaknesses of the *Connelly* plaintiffs' expert report, discussed likely areas of cross examination, reviewed Hilton's other consulting expert's report, and discussed how certain evidence applied to certain case issues. Given that a major issue in *Connelly* (and indeed in this case as in many TCPA cases) was whether Hilton's dialing system (as it related with its other dialing systems and overall telemarketing protocols) had the *capacity* to place automatically dialed calls without human intervention, Hilton's counsel shared its understandings of how the capacity issue related to Hilton's overall telemarketing program and how Hilton and its counsel approach those issues with respect to the TCPA and FCC Rulings. In that regard, Mr. Snyder testified at his deposition in *Connelly* that "[y]ou can't divorce the overall system from how it was configured and used."

6. Later that month, after Hilton prevailed in its motion to defeat class certification in *Connelly*, the case was voluntarily dismissed and plaintiffs took an immediate appeal. *Connelly* remains pending on appeal before the United States Court of Appeal for the Ninth Circuit; and, if the challenged class certification ruling is reversed, the action will be remanded for continued litigation. Mr. Snyder remains one of Hilton's designated experts in *Connelly*. Mr. Snyder continued to have occasional e-mail and telephonic communications with Liner attorneys regarding legal developments relating to the TCPA and defense strategies regarding same through 2014.

7. In July 2015, while *Connelly* remained before the Ninth Circuit, I continued to confidentially discuss Hilton's telemarketing systems and legal strategies with Mr. Snyder. Such discussions were relevant to *Connelly* as well as Hilton's continual efforts to ensure compliance with the TCPA and with newly promulgated FCC regulations in 2015. Although this action had

not yet been filed, my discussions with Mr. Snyder directly related to the dialing systems and other telemarketing practices Hilton used during the proposed class period at issue here and the potential changes to those systems and practices. I discussed with Mr. Snyder confidential legal strategies and analyses regarding the FCC's recent rulings, Hilton's ongoing efforts to comply with the TCPA and with applicable FCC rulings, and the evaluation of potential options for a new dialing system.

       8.      On July 14, 2015, I called Mr. Snyder and left him a voicemail message regarding ongoing and further consulting for Hilton. Mr. Snyder received that message and responded to me in writing by e-mail the following day. Mr. Snyder and I then engaged in at least two telephone conferences on July 15, 2015, which together lasted at least forty-five minutes. During those telephone conferences, Mr. Snyder and I discussed in great detail the new FCC regulations, Hilton's dialing system, Hilton's potential transition to a new dialing system, the legal and strategic considerations involved in those decisions, and other aspects of Hilton's telemarketing practices and legal strategies vis-à-vis the TCPA. We also discussed Hilton's continuing compliance with the TCPA, and how Hilton's systems were being configured and used. I also shared my impressions and conclusions regarding his interpretation of the new regulations, and how they applied specifically to Hilton. I requested that Mr. Snyder provide me with his impressions as well.

       9.      Mr. Snyder then sent me an e-mail summarizing some the points of our discussion and rendering his professional opinion. Mr. Snyder then provided me with the names of specialized audit firms and the new FCC regulations, sending two e-mails to me on July 16, 2015 and July 22, 2015.

10. Only July 30, 2015, I followed up with Mr. Snyder by e-mail. Mr. Snyder replied to my e-mail on August 3, 2015, stating that he does not typically provide the services sought by Hilton.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 24, 2017, at Los Angeles, California.

*/s/ David B. Farkas*
DAVID B. FARKAS