# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **MELANIE GLASSER,** *individually and on behalf of all others similarly situated*, | ) ) ) | |
| **Plaintiff,** | ) ) ) | **CIVIL ACTION NO.** **8:16-cv-00952-JDW-AAS** |
| **v.** | ) ) | |
| **HILTON GRAND VACATIONS COMPANY, LLC,** | ) ) ) | |
| **Defendant.** | ) ) | |

## RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISQUALIFY

Plaintiff Melanie Glasser opposes the motion (Doc. 55) filed by defendant Hilton Grand Vacations Company, LLC ("Hilton") to disqualify for the following reasons:

### I.  Summary of Opposition

Hilton asks the Court to take the drastic action of disqualifying Plaintiff's chosen expert (Randall Snyder) and her chosen counsel simply because Snyder, an expert on the functionality of automatic telephone dialing systems ("ATDS"), was retained by Hilton in a prior unrelated TCPA case (*Connelly*) that involved different dialing systems that are not at issue here.  Yet the 11th Circuit has expressly refused to recognize any rule requiring disqualification of experts in these circumstances, let alone counsel.  Further, if the Court were to apply Hilton's proposed rule, Hilton fails to make the extraordinary showing required for such an order even as to Snyder.  It fails to establish that it had a confidential relationship with Snyder, it fails to establish that it provided any confidential information to Snyder, and it fails to establish that any such confidential information is relevant to this case, which concerns an entirely different dialing system than the one at issue in *Connelly*.  Thus, the scope of Snyder's retention in

1

Connelly is completely distinct from the scope of his retention here.

Further, even if Hilton could establish each of these elements, it would still not meet its burden to establish the propriety of disqualification because such an order would severely prejudice Plaintiff's ability to prosecute this action.  There are only three (3) people of whom Plaintiff's counsel are aware that have ever provided for plaintiffs this type of expert testimony. Hilton retained two of them in the Connelly case.  Thus, Hilton is seeking to corner the market and, essentially, is asking this Court to force Plaintiff to use an expert witness that she does not want to use if she wants to prove that Hilton uses technology prohibited by the TCPA.

Finally, following Hilton's logic, it is actually *its own counsel* that should be disqualified.  By the time that Liner hired Mr. Snyder for the *Connelly* case, Plaintiff's counsel at Keogh law had already been working with Mr. Snyder for years.  Prior to *Connelly*, Keogh had retained Snyder in two separate TCPA cases, and shared Keogh's legal strategies for TCPA cases with him during that time. By Hilton's logic, its own counsel would need to be disqualified in this case because Hilton contends the Court should simply presume that Liner possesses that "confidential" information and will unfairly use it against the Plaintiff here.

## II.  Factual and Legal Background

The TCPA prohibits using an ATDS to make calls to cellular telephone numbers without prior express consent. 47 U.S.C. 227(b)(1)(A)(iii). Thus, a central issue in TCPA cases is whether the defendant used an ATDS.  The TCPA defines an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. 227(a)(1).  "The basic function of such equipment [is] the capacity to dial numbers without human intervention." *In*

*re Rules and Regs. Implmntg. the TCPA*, 30 FCC Rcd. 7961, 7973, ¶ 14 (June 18, 2015).[1]

Randall Snyder is a telecommunications expert who has provided expert testimony in numerous TCPA cases regarding the capacities and functionalities of the particular telephone equipment at issue in those cases. *Snyder Dec.* at ¶ 2. He has been retained in 105 cases TCPA cases for that purpose since early 2007. *Id.* at ¶ 3. Snyder's testimony in such cases is always "based on an objective engineering analysis of the telecommunications system at issue in the case. [His] opinions are limited to a technology analysis. [He] does not opine on legal issues and strategies, or telemarketing procedures and practices." *Snyder Dec.* at ¶ 17. There are only two other persons known to Snyder or Plaintiff's counsel that have testified regarding such dialing systems for Plaintiff's in TCPA cases – Robert Biggerstaff and Jeff Hansen. *Snyder Dec.* at ¶ 18; *Keogh Dec.* at ¶ 8.

### A. Snyder Testifies Regarding Specific Dialing Systems for Keogh

Plaintiff's counsel, Keogh Law, Ltd. ("Keogh") has had a working relationship with Mr. Snyder for nearly seven years. *Id.* at ¶ 9. Keogh first retained Snyder in October 2010, to testify in *Dobbin v. Wells Fargo Auto Finance, Inc.* (10-cv-00268) (N.D. Ill.), regarding the telephone equipment used in that case – the Aspect Conversations dialer, manufactured by Aspect Software. *Id.* Keogh retained Snyder again in May 2011 to testify in *Griffith v. Consumer Portfolio Serv., Inc.* (10-cv- 2697) regarding the telephone equipment used in that case – the Castel Dialer, manufactured by Castel Communications. *Id.* Snyder was also retained by Keogh in *Wanca v. LA Fitness International, LLC* (11 –CH-4131 (19th Judicial Circuit, Ill.) to testify whether a smart phone combined with a mass texting application that

---

[1] Since October 16, 2013, telemarketing calls require "prior express *written* consent." 47 C.F.R. § 4.1200(a)(2).

blasted out over 40,000 text advertising message was an ATDS.  *Id.*  During the course of

Snyder's retentions in all three, Keogh discussed with Snyder Keogh's mental impressions,

case strategies, and work product regarding the prosecution of TCPA lawsuits. *Id.*

**B.  Snyder Testifies Regarding the Liberation 6000 Dialer in *Connelly***

In October 2012, Hilton retained Snyder as a testifying expert in *Connelly v. Hilton*,

12-cv-599 (S.D. Cal.) regarding the telephone equipment used in that case – the Liberation

6000 dialer, manufactured by TDI, Inc. *See Snyder Dec.* at ¶ 6; *Exhibit 1 - Dec. of John Allen*

at ¶ 3.  The class proposed for certification in Connelly was limited to persons called between

March 9, 2008 and March 9, 2012. *See Doc. 55-2 – Connelly Complaint* at ¶ 17 (defining class

as persons called "within the four years prior to the filing of this complaint.")[2]  During that

time period, Hilton used the Liberation 6000 dialing system to place its telemarketing calls to

cellular telephone numbers. *See Exhibit 1 - Dec. of John Allen* at ¶ 3.

Hilton's expert disclosures in *Connelly* identify both Snyder and Robert Biggerstaff as

testifying experts who would testify regarding the capacity and functionality of the Liberation

dialer. *Doc. 55-3* at p. 3.   Yet, Snyder and Hilton never agreed that they were entering into a

confidential relationship – they did not even execute a written retainer. *Snyder Dec.* at ¶ 7.

**C.  This Action concerns the Interactive Intelligence CIC Dialer**

Ms. Glasser filed this action on April 20, 2016.  *Doc. 1*.  She alleges that Hilton placed

telemarketing calls using an ATDS without her prior express *written* consent in violation of

---

[2] Hilton argues that if *Connelly* is reversed, the class in *Connelly* may be amended to the present, but it has not
explained how such would be possible when the classes involve different dialing systems and different consent
requirements.  Regardless, there is nothing improper about Snyder testifying that one system is not an ATDS
while the current system is. *Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080, 1086 (C.D. Cal. 2000) (expert
witness, like all other witnesses, "is beholden to the truth first, and the party second, if at all.")

4

the TCPA and it implementing regulations. *Id.* at ¶¶ 27-34.  Plaintiff seeks certification of a

class of persons called "using substantially similar dialing system(s) that called Plaintiff or an

artificial or prerecorded voice (5) on or after October 16, 2013 (6) without that person's signed,

written agreement authorizing Defendant to initiate automated or prerecorded telemarketing

calls to that number." *Id.* at ¶ 37.  During the time period at issue in this case (October 16, 2013

to the present), Hilton used only the Interactive Intelligence, Inc. Customer Interaction Center

(CIC) 4.0 dialing system. *See Exhibit 2 - Hilton's Amended Disc. Resp.* at Rog. 5.

### D.  Hilton Fails  Produce a Privilege Log

Plaintiff served numerous Requests for Production of Documents that would have

required the production, or at least the identification, of communications with Snyder if

Hilton's descriptions of its communications with Snyder are accurate and it actually believed

those communications are relevant to this case, including: RFP 5 - "all documents describing

your policies and procedures for making the telephone calls [at issue in this case]"; RFP 8 -

"all documents describing the capabilities, functions, or instructions for use of the dialing

system you used to call Plaintiff;" RFP 10 - "all documents that discuss or relate to policies,

practices or procedures associated with making telephone calls to cellular telephones;" RFP 11

- "documents which discuss, describe or set forth standards, criteria, guidelines, policies or

practices relating to the Telephone Consumer Protection Act or mention the TCPA;" RFP 18

- "all documents provided to or received from any expert or other person from whom you may

elicit testimony or obtain a declaration or affidavit in this matter;" & RFP 24 -  "all documents

related to telephone marketing strategies[.]"*See Exhibit 2 - Hilton's Amended Disc. Resp.*

Hilton served its discovery responses on September 2016 and its amended responses

on February 6, 2017. *Id.*  Hilton did not produce or identify any communication with Snyder

in its response. *Id.*  Nor did it produce a privilege log relating to any such communications. *Id.*

### E.  Keogh Retains Snyder Regarding the Interactive Intelligence Dialer

Having no reason to believe that Snyder was in possession of any confidential

information, especially as Snyder's CV showed *Connelly* was closed in 2013, which is prior

to Hilton's implementation of the systems at issue, counsel reached out to Snyder on February

27, 2017.  *Keogh Dec.* at ¶ 11.  Counsel asked Snyder if he was retained by Hilton or had any

information regarding Hilton's current system that would create a conflict for this litigation.

*Id.* at ¶ 12 After Keogh learned that Snyder was not retained, had no information regarding the

dialing systems at issue and did not have any conflicts, Keogh inquired if he would be willing

to provide testimony regarding the Interactive Intelligence system.  *Id.* at ¶ 13-14.

In addition, Plaintiff's counsel has never seen Snyder's expert report in the Connelly

matter and has never seen a transcript from Snyder's deposition in the Connelly matter. *Id.* at

¶ 15.  Other than what is portrayed in the declarations of Farkas (55-1), Agrusa (55-2), and

Snyder, Plaintiff's counsel has no knowledge regarding any communication between Snyder

and Hilton or Liner. *Id.* at ¶ 16.  In fact, Plaintiff's counsel has repeatedly asked Hilton to

identify what information it contends was inappropriately shared with Plaintiff's counsel.  *Id.*

at ¶ 17.  Hilton has never been able to answer the question; it has never identified a single item

of information that it contends was wrongfully obtained by Plaintiff's counsel. *Id.*

### III. The Eleventh Circuit Rejects any Rule against Hiring an Adversary's Former Expert

The Eleventh Circuit refuses to recognize any rule against retaining an expert witness

that formerly worked for the opposing party, even when the 'side-switching' occurs in the

course of the same case. *See Industrial Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH*, 141 F.3d 1434, 1445 (11th Cir. 1998) ("In the absence of any precedent, we decline to recognize any blanket rule or policy against 'side-switching.'")  Thus, courts have refused to disqualify expert testimony in these circumstances based on the absence of any such rule in this circuit. *See Union Ins. Co. v. Blakeney Palmer Co., LLC*, 2015 U.S. Dist. LEXIS 123220, *19-20 (N.D. Ala. 2015) ("courts have refused adopt a blanket rule against such "side-switching" arrangements, where a party calls an adversary's former expert witness to testify against the adversary."), citing *Industrial Risk Insurers*, 141 F.3d at 1445; *Russ v. Berchtold Corp.*, 2013 U.S. Dist. LEXIS 192137, *8 (S.D. Fla. 2013) ("Neither the parties' briefs nor the Court's own research reveals any per se rule forbidding a party from calling an adversary's expert during his case-in-chief."); *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2010 U.S. Dist. LEXIS 32606, *15-16 (M.D. Ga. 2010) ("the Court declines to follow the 'inherent powers' argument suggested by Mentor[.]")

Indeed, the Eleventh Circuit has expressly recognized that even when "a witness has been designated as expected to testify at trial, there may be situations when the witness should be permitted to testify for the opposing party. *Peterson v. Willie*, 81 F.3d 1033, 1037-38 (11th Cir. 1996).  The only rule applicable in those situations is that "a party should not generally be permitted to establish that the witness had been previously retained by the opposing party." *Id.* Thus, even if Hilton had disclosed Snyder as its testifying witness *in this case*, his retention by Plaintiff is simply not a basis for disqualification recognized by the Eleventh Circuit.  Hilton's motion for disqualification of Snyder and of Plaintiff's counsel should therefore be denied for this reason alone.  Considering that Snyder merely testified for Hilton in prior, unrelated case

about the Liberation Dialer, and his testimony here will be limited to the Interactive

Intelligence Dialer, Eleventh Circuit precedent forecloses disqualification as a remedy.

### IV. Mr. Snyder Should not be Disqualified Even Under Hilton's Theory

Hilton has not cited a single case from within this circuit where either an expert or

counsel was disqualified where the expert formerly testified as an expert for the opposing party.

Instead, numerous courts have refused to do so even under Hilton's proposed rules. *See United

States ex rel. Desrosiers v. Thaller*, 2016 U.S. Dist. LEXIS 151220, *42 (S.D. Fla. 2016)

(denying motion to disqualify expert witness on grounds that Hilton alleged here); *NXP B.V.

v. Research in Motion, Ltd.*, 2013 U.S. Dist. LEXIS 195942, *9 (M.D. Fla. 2013); *In re Mentor

Corp.*, 2010 U.S. Dist. LEXIS 32606 at *15-16; *Wyatt v. Hanan*, 871 F.Supp. 415, 422 (M.D.

Ala. 1994); *In re Androgel Antitrust Litig.*, 2011 U.S. Dist. LEXIS 53169 (N.D. Ga. 2011);

*Audio MPEG, Inc. v. Dell, Inc.*, 2016 U.S. Dist. LEXIS 147920, *22-23 (E.D. Va. 2016).

"[D]isqualification of an expert witness is a drastic remedy that courts use sparingly.

There is a recognized reluctance to disqualify expert witnesses who 'possess useful specialized

knowledge.'" *Thaller*, 2016 U.S. Dist. LEXIS 151220 at *42, citing *Murray Energy v.

McCarthy*, 2016 U.S. Dist. LEXIS 85344 (N.D. W.Va. 2016).   "[C]ases that grant

disqualification are rare." *U.S. v. Mock*, 2014 U.S. Dist. LEXIS 86920, n.3 (M.D. Ala. 2014).

According to Hilton, "disqualification of an expert is warranted based on a prior

relationship with an adversary if (1) the adversary had a confidential relationship with the

expert and (2) the adversary disclosed confidential information to the expert that is relevant to

the current litigation." *Doc. 55* at p.11, citing *Wang Labs, Inc. v. Toshiba Corp.*, 762 F. Supp.

1246 (E.D. Va. 1991).  Thus, even under this test, "disqualification should not occur where a

confidential relationship existed but no privileged information was communicated, or, alternatively, where no confidential relationship existed but privileged information was nonetheless disclosed." *Thaller*, 2016 U.S. Dist. LEXIS 151220 at *42.   Hilton bears the burden of proof on these elements. *NXP B.V.*, 2013 U.S. Dist. LEXIS 195942 at *9.

Further, even if Hilton were to prove these elements, the court must then engage in a "balancing of the competing interests" and consider policy objectives before deciding whether disqualification is appropriate. *Wyatt*, 871 F.Supp. at 422.   As shown below, Hilton fails to establish a confidential relationship, fails to establish that it disclosed confidential information relevant to this case, and fails to establish sound policy objectives for disqualification.

**A.  Hilton Did Not Have A Confidential Relationship with Snyder**

"The party seeking disqualification bears the burden of showing the existence of confidentiality and its non-waiver." *Thaller*, 2016 U.S. Dist. LEXIS 151220 at *43.  "Unlike attorney-client communications, discussions between parties or counsel and experts do not carry the presumption that confidential information was exchanged." *Id.* at *52, citing *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1094 (N.D. Cal. 2004).  This is because "experts are not advocates in the litigation but sources of information and opinions." *Id.* at *42.  Thus, "absent equitable reasons to the contrary, any substantial ambiguity regarding whether there is a confidential relationship between an attorney and an expert should be resolved against the attorney seeking to invoke the relationship." *Wyatt*, 871 F.Supp. at 420; *Cameron v. Peach County*, 2003 U.S. Dist. LEXIS 28077, *10 (M.D. Ga. 2003).  This rule exists because, "lawyers are in the best position to development mechanisms to assure that both they and the expert have a clear and unambiguous understanding that a confidential relationship has

9

been created." *Wyatt*, 871 F.Supp. at 420-21.  Since lawyers "have the knowledge, experience, and the ability to avoid the conflict, it is appropriate that the consequences for failing to take the necessary precautionary measures should fall upon them." *Id.* at 421.

In this case, Hilton claims that, through Liner, it entered into a confidential relationship with Snyder when Liner retained him to provide expert testimony in the *Connelly* case.  Yet there is no evidence that this was a confidential relationship for *Connelly,* let alone after *Connelly* was resolved in 2013.  Hilton has failed to identify any confidentiality agreement or, indeed, any agreement with Snyder whatsoever.  Further, Snyder states that he cannot recall such an agreement. *Snyder Dec.* at ¶ 7.  Thus, Hilton failed to ensure a "clear and unambiguous understanding that a confidential relationship has been created." *Wyatt*, 871 F.Supp. at 420-21.

Putting aside that this Circuit has rejected Hilton's test, a court is "not called upon to use its 'inherent' or 'equitable' powers to prevent the breach of such an agreement" where the party seeking disqualification "never had a confidentiality agreement with [the expert]" in the first place. *In re Mentor Corp.*, 2010 U.S. Dist. LEXIS 32606, *15-16 (M.D. Ga. 2010).

That Snyder was a *testifying* expert in *Connelly* further "undermines [Hilton's] claim of a confidential relationship, since testifying experts must reveal the underlying sources relied upon in reaching their conclusions at deposition and on cross examination." *Stencel*, 174 F.Supp.2d at 1084.  Indeed, testifying experts must reveal communications with attorneys that "identify facts or data . . . that the expert *considered* in forming the opinions to be expressed." Fed. R. Civ. P. 26(b)(4)(C).  Thus, any *relevant* facts or data that Hilton ever disclosed to Snyder are discoverable.  While irrelevant facts or data need not be disclosed, that protection, "rather than being a privilege . . . is simply *a limitation on discovery*[.]" *Riley v. Dow Chemical*

10

*Co.*, 123 F.R.D. 639, 639 (N.D. Cal. 1989) (emphasis added).  Thus, considering that Hilton/Liner, hired Snyder as a testifying expert in *Connelly*, Hilton/Liner must have been aware that Snyder was required to disclose all relevant communications with counsel.  In the absence of any confidentiality agreement with Snyder, Hilton/Liner could not have expected a confidential relationship.  At best, there is ambiguity, which the Court must resolve against Hilton and its attorneys.  *See Wyatt*, 871 F.Supp. at 420.  Finally, even if there was such a relationship in *Connelly*, there has been no showing it survived its disposition in 2013.

**B.  Hilton Did Not Share Confidential Information Relevant to this Case**

"Confidential information is information that can be readily identified as either attorney work product or within the scope of the attorney-client privilege." *Thaller*, 2016 U.S. Dist. LEXIS 151220 at *50-51.  "Technical information is not confidential." *NXP B.V*, 2013 U.S. Dist. LEXIS 195942 at *10; *Hewlett-Packard Co.*, 330 F. Supp. 2d 1087 at 1094 ("communication based upon technical information . . . not considered privileged.")

Here, Hilton complains that it disclosed information to Snyder in *Connelly* concerning "Hilton's policies and procedures relating to its compliance with the TCPA," its "internal telemarketing practices and systems," and its "dialing systems," *See Doc. 55* at, *e.g.,* p. 4. None of this information is confidential.  It is all discoverable technical information that would not even be relevant to this case.  Putting aside the fact that telemarketing practices are irrelevant to whether a system is an ATDS, any consent discovery in *Connelly* is irrelevant here. [3]

The decision in *NXP B.V.* is again instructive.  In that case, the court heard a motion

---

[3] Unlike in *Connelly*, the class in this case is limited to calls on or after October 16, 2013, which are subject to the signed written consent requirement.  So how Hilton obtained oral consent in *Connelly* is irrelevant.

for disqualification of the plaintiff's expert where the defendant had retained the plaintiff's expert in a previous case (Saxon) regarding the defendant's patents.  The court denied the motion for disqualification even though the plaintiff's expert had "promised to maintain in confidence, all of the information given to him and all of his discussions with the attorneys" and "also promised not to consult as an expert, any adverse parties during the Saxon litigation without Howrey or RIM's prior approval." *Id.* 2013 U.S. Dist. LEXIS 195942 at *7.  The court denied the motion for disqualification because "the information RIM disclosed was technical and, depending upon the claims and defenses of the parties, discoverable." *Id.* at *11.

The same is true in this case even if Hilton can show the same policies and procedures are even at issue in this case where the class is limited to calls after October 2013 and based on the TCPA express signed written consent requirement.  Information even about Hilton's current policies and procedures relating to its compliance with the TCPA, let alone its old policies, its "internal telemarketing practices and systems," and its "dialing systems," is all technical, discoverable information that is not granted any privilege protection under law.  It is not confidential even under Hilton's own disqualification theories.

Hilton's vague assertions that Hilton/Liner also shared with Snyder their "strategies, impressions, and legal positions as relates to the TCPA" (*Doc. 55* at p. 7) also fail.  Given the severity of disqualification, "generalized and vague allegations that the Experts know 'mental impressions and trial strategies' is insufficient to establish that confidential information was disclosed." *In re Androgel*, 2011 U.S. Dist. LEXIS 53169 at *20, citing *Atlantic City Assocs., LLC v. Carter & Burgess Consultants, Inc.*, 2007 U.S. Dist. LEXIS 1185, *7 (D.N.J. 2007) (Such generalized and vague allegation "is hardly the sort of proffer that should compel a court

to disqualify an expert.")  Here, Hilton makes vague and shifting references to meaningless labels, "impressions," "litigation strategies," "work product," without ever specifying what, exactly, it is referring to.  Hilton fails to establish confidential information was shared.

The decision in *In re Androgel* is instructive.  In that case, the defendants Par/Paddock argued that it had previously disclosed confidential information to the plaintiff's expert.  "To support their claim, Par/Paddock has submitted the declaration of Daniel Ladow[.]  Ladow asserts that he shared 'developing mental impressions, legal analysis, and case strategy with Dr. Michniak-Kohn.'" *Id.* at *20.  The Court denied the motion disqualify, ruling that "these general allegations, however, are not sufficiently specific to establish that Par/Paddock disclosed confidential information." *Id.* at 21.  Also instructive is the decision in *Goldman v. Bracewell & Patterson, L.L.P.*, 2005 U.S. Dist. LEXIS 45924 (M.D. Fla. 2005), where the court held that the defendant "failed to show that he revealed any confidential information to [the plaintiff's expert]" because "[w]ithout offering any specifics," the defendant vaguely contended, as Hilton does here, that it had revealed "mental impressions . . . during privileged conversations[.]" *Id.* at *6.  The Court should follow these decisions.

Further, even if Hilton and Liner did disclose confidential legal strategies and work product to Snyder, it would be their strategies and assessments in *Connelly*, which do not have any relevance to this case.  Hilton's liability in *Connelly* depended on the functionality of the Liberation Dialer; it's liability in this case depends on the functionality of the Interactive Intelligence Dialer, a completely different system.  Thus, disqualification is inappropriate because Snyder's testimony in this case will depend on his assessment of the Interactive Intelligence dialer, not Hilton and Liner's strategies in the *Connelly* case. S*ee Industrial Risk*

*Insurers*, 141 F.3d at 1445 ("concerns about the confidentiality of work product and litigation strategy are not implicated because . . . his testimony before the panel neither relied upon any confidential work product of IRI's attorneys nor included any information about the respondents' litigation strategy."); *see also Audio MPEG*, 2016 U.S. Dist. LEXIS 147920 at *22-23 (denying motion to disqualify where the expert's "engagement for Dell concluded more than four years ago, and any confidential or privileged information disclosed to him is not sufficiently relevant to the instant litigation to require the unusual remedy of disqualification.")

*NXP B.V.* is again instructive.  In that case, the existence of a confidential relationship was beyond dispute, but the court nevertheless denied the motion to disqualify because even "[a]ssuming arguendo that Dr. Alpert was made privy to privileged information, (which was not proven), it would be Mr. Chassman's strategies in and assessments of the Saxon case, which do not have any bearing on this case." 2013 U.S. Dist. LEXIS 195942 at *11.  The Court should follow this reasoning here.  Hilton's strategies and assessments in *Connelly* have no bearing here because Hilton's liability in each case depends on entirely different dialing systems.

Although Hilton claims that it contacted Snyder in 2015 to see if he was interested in examining the Interactive Intelligence Dialer, the evidence shows that Liner did not convey any information about the dialer to Snyder whatsoever, much less its legal impressions of the dialer. *Snyder Dec.* at ¶ 9 ("Mr. Farkas provided no information at all about the new technology being used by HGV or any differences between that technology and that which I had previously analyzed.")  Rather than engage in any confidential discussions regarding the system, Mr. Snyder instead declined Liner's offer to analyze it. *Id.*

a.  <u>Hilton Waived any Claim of Privilege</u>

Finally, Hilton has waived any claim of privilege concerning its communications with Snyder.  As shown above, Hilton was required to produce its communications with Snyder in response to various discovery requests by Plaintiff if it deemed them relevant to this case (which it must do to prevail on its disqualification theory.) See. RFP No 5, 8, 10, 11, 18, & 24 discussed *supra*.  Yet it failed to identify such communications, in a privilege log or otherwise.

 "A party that fails to submit a privilege log is deemed to waive the underlying privilege claim." *Johnson v. Gross*, 611 Fed. Appx. 544, 547-48 (11th Cir. 2015) (unpublished), citing *In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001); see also Fed. R. Civ. P. 26(b)(5)(A) ("the party must . . . describe the nature of the . . . communications . . . in a manner that . . . will enable other parties to assess the claim."). "Blanket assertions of privilege before a district court are usually unacceptable . . . Instead, [an attorney] must present himself with his records for questioning, and as to each question and each record elect to raise or not to raise the defense." *In re Grand Jury Subpoena*, 831 F.2d 225, 227 (11th Cir. 1987) (citation omitted).

Thus, Hilton has waived any claim of privilege in this case.  Moreover, because Hilton failed to identify any communications with Snyder, Plaintiff's counsel had no way of knowing that Hilton believed Snyder to be in possessions of relevant confidential information.

### C.  Disqualification Defeats Public Policy

Disqualification is such an extreme remedy that courts often decline to do so even where the elements of Hilton's test are satisfied.  *See e.g. Wyatt*, 871 F.Supp. at 422 ("a balancing of the competing interests compels the conclusion that [the court] reaches.")  The main policy objectives militating against disqualification are ensuring access to expert witnesses who possess specialized knowledge and allowing experts to pursue their professional

calling." *In re Androgel*, 2011 U.S. Dist. LEXIS 53169 at *22.  Thus, courts should "consider the availability of an alternative expert witness[.]" *Thaller*, 2016 U.S. Dist. LEXIS 151220 at *44.  In addition, "courts have also expressed concern that if experts are too easily subjected to disqualification, unscrupulous attorneys and clients may attempt to create an inexpensive relationship with potentially harmful experts solely to keep them from the opposing party." *Id.*

That is exactly what Hilton has done in this case.  It has attempted to corner the market for plaintiff friendly testifying experts regarding the functionalities of automated dialing systems in TCPA cases.  It retained two of the only three known witness in that field in the *Connelly* case even though both had worked for Keogh before Hilton retained them. Thus, Hilton is seeking to corner the market.  These facts alone makes disqualification unwarranted. *In re Androgel*, 2011 U.S. Dist. LEXIS 53169 at *22 (denying motion to disqualify because "there is evidence that experts in this area have been difficult to find.")

Further, disqualification is unwarranted because it would disrupt Plaintiff's counsel's long standing relationship with Snyder.  Keogh has been working with Snyder for seven years – Snyder had provided expert testimony for Keogh in two cases before Hilton/Liner hired Snyder for the Connelly matter. Disqualification is inappropriate given that "long standing relationship." *Wyatt*, 871 F.Supp. 415 at 422 (refusing to disqualify because expert "has had a long standing relationship with the plaintiffs.")  Indeed, under Hilton's logic, this long standing relationship would require that Liner be disqualified because Keogh shared with Snyder his legal strategies for TCPA cases prior to and during Connelly.  By Hilton's logic, the Court should simply presume that they are in possession of "confidential" information and will unfairly use it against the Plaintiff in this case.  Thus, a weighing of the interests precludes

disqualification of Snyder or counsel here.

## V.  Plaintiff's Counsel Should not be Disqualified

"Disqualification of one's chosen counsel is a drastic remedy that should be resorted to sparingly." *Armor Screen Corp. v. Storm Catcher*, 709 F. Supp. 2d 1309, 1310 (S.D. Fla. 2010), citing *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982). "Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if compelling reasons exist." *Armor Screen Corp.*, 709 F. Supp. 2d at 1310-11, citing *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003).  "Furthermore, such motions are generally viewed with skepticism because they are often interposed for tactical purposes."[4] *Schainberg v. Urological Consultants of S. Fla.*, 2013 U.S. Dist. LEXIS 197208 *13-14 (S.D. Fla. 2013). Such a motion "serves to destroy relationships by depriving a party of counsel of their own choosing." *Hernandez v. Royal Caribbean Cruises LTD*, 2010 U.S. Dist. LEXIS 98113, *2 (S.D. Fla. 2010).  Thus, courts in this circuit have refused to disqualify counsel even in cases where they were suing their own past clients. *Id.* (denying motion to disqualify because cases were not sufficiently related).

Given that there is no rule in this circuit against calling an adversary's former expert witness to testify against the adversary (*see supra*), disqualification is unwarranted in this case, which is why  courts in this circuit has repeatedly declined to disqualify counsel on similar facts. *See In re Androgel Antitrust Litig.*, 2011 U.S. Dist. LEXIS 53169 at *24; *Gibbs Props.*

---

[4] Hilton's tactical attack using Florida's Rules of Professional Conduct is itself a violation of the Rules. *See* Preamble ("the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule.")

*Corp. v. Cigna Corp.*, 196 F.R.D. 430, 437 (M.D. Fla. 2000) (refusing to disqualify counsel where "there is no letter, statement, or contract provided to the Court memorializing a confidentiality agreement between Defendants and Mr. Lindquist."); *First Prof'l Ins. Co. v. Owen, Gleaton, Egan, Jones & Sweeney, LLP*, 2015 U.S. Dist. LEXIS 53140 (N.D. Ga. 2015) (the conduct of Plaintiff's attorneys does not merit disqualification.")

Further, even where courts have disqualified the expert under Hilton's theory, they have refused to disqualify counsel when there is no evidence that counsel actually obtained any of the confidential information. *See Kane v. Chobani, Inc.*, 2013 U.S. Dist. LEXIS 109900, *50-51 (N.D. Cal. 2013) ("Due to the absence of evidence that Plaintiffs' Counsel actually acquired confidential information, the Court does not find such a drastic remedy to be required or appropriate.") (emphasis added).  There is no such evidence in this case.  Plaintiff's counsel inquired if Mr. Snyder was retained by Hilton, if he had confidential information and had any conflicts that would preclude his testimony here.  Counsel has also has repeatedly asked Hilton to identify any such information that it believes counsel wrongfully obtained, but Hilton has never been able to identify anything. *Keogh Dec.* at ¶ 17.  Further, given that (1) *Connelly* concerned a completely different dialing system and time frame than the system and time frame at issue in this case, (2) Snyder was a *testifying* expert in Connelly, (3) there is no confidentiality agreement between Snyder and Hilton, and (4) Hilton failed to identify any communications with Snyder in a privilege log in this case, Plaintiff had no reason to believe that Hilton would contend that Snyder was in possession of confidential information relevant to this case.  As such, disqualification of counsel is unwarranted.

Each of the cases that Hilton relies on to support its argument that counsel should be

disqualified are entirely inapposite.  First, *Hermann v. Gutterguard, Inc.*, 199 F. App'x 745 (11th Cir. 2006), *Blue Heron Beach Resort Developer, LLC v. Branch Banking & Trust Co.*, 2014 U.S. Dist. LEXIS 20427 (M.D. Fla. 2014), and *State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So. 2d 630 (Fla. 1991) each concerned an attorney's lawsuit against a former client, which has no relevance whatsoever to the issue here.  Second, *Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575 (D. N.J. 1994) concerned an expert that changed sides in *the same case* after he was provided confidential information *regarding that case*.  Similarly, *Erickson v. Newmar Corp.*, 87 F.3d 298 (9th Cir. 1996) concerned an attorney's bribe to the opposing party's designated expert in the same case.  Yet Hilton never designated Snyder in this case.  Further, Snyder's testimony in *Connelly* only concerned the Liberation Dialer, which is not even at issue here.  Finally, the 11th Circuit has already rejected any rule against switching sides, *even in the same case*. *See Industrial Risk Insurers*, 141 F.3d at 1445; *Peterson*, 81 F.3d at 1037-38.  Third, both *MMR/Wallace Power & Indus., Inc. v. Thames Assoc.*, 764 F. Supp. 712 (D. Conn. 1991) and *Rentclub, Inc. v. Transamerica Rental Fin. Corp.*, 811 F. Supp. 651 (M.D. Fla. 1992) concerned an unauthorized ex parte contact with a confidential former *employee* of the opposing party, who "may be considered a party for purposes of model rule[s]" of professional responsibility. *Rentclub, Inc.*, 811 F. Supp. at 657.  Under *Rentclub*, only "current employees" or "former employees whose acts could result in vicarious liability for the employer" could be considered to be a represented party under the rules prohibiting contact with represented persons. *Id.* Yet Snyder has never been an employee of Hilton, much less one that could impose vicarious liability upon Hilton.  Thus, these cases do not apply.  Fourth, *Armor Screen Corp*, 709 F.Supp.2d 1309 concerned an attorney who consulted with the

opposing party about the subject matter of the lawsuit before suing that opposing party.  Here, Plaintiff's counsel never consulted with Hilton.

Thus, Hilton has failed to cite a single case where counsel was disqualified for the conduct at issue here – hiring an expert witness, who they have used numerous times in the past, to testify against a party that had also used that expert's services in a prior matter for an unrelated system.  Hilton's Motion should be denied.

Respectfully submitted,

/s/ Timothy J. Sostrin
Timothy J. Sostrin (*pro hac vice*)
KEOGH LAW, LTD
55 W. Monroe St, Suite 3390
Chicago, IL 60603
312-726-1092
312-726-1093 (fax)
TSostrin@KeoghLaw.com
*Attorneys for Plaintiff* MELANIE GLASSER

William Peerce Howard (FBN 0103330)
Amanda J. Allen (FBN 098288)
THE CONSUMER PROTECTION FIRM
210 A-South MacDill Ave.
Tampa, Florida 33609
Telephone: 813-500-1500
Billy@TheConsumerProtectionFirm.com
Amanda@TheConsumerProtectionFirm.com
*Attorneys for Plaintiff* MELANIE GLASSER

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 8, 2017, I electronically filed the foregoing **Response to Motion to Disqualify** with  by using the CM/ECF system, which will serve a notice of electronic filing upon all parties via their counsel of record.

By:  s/ Timothy J. Sostrin
*Counsel for Plaintiff Melanie Glasser*