UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MELANIE GLASSER,**
*Individually and on Behalf of All Others*
*Similarly Situated***,**

        **Plaintiff,**

**v.**                                    **Case No.: 8:16-cv-952-T-27AAS**

**HILTON GRAND VACATIONS**
**COMPANY, LLC,**

        **Defendant.**
_____/

## ORDER

Before the Court is Defendant's **Motion to Disqualify Plaintiff's Expert Witness, Randall A. Snyder, and to Disqualify Plaintiff's Counsel of Record** (Doc. 55) and Plaintiff's **Response in Opposition to Defendant's Motion to Disqualify** (Doc. 56).  A hearing was held on the motion on July 7, 2017.  At the hearing, Plaintiff submitted Mr. Snyder's preliminary expert report for *in camera* review.  On July 14, 2017,  Defendant submitted a set of documents for *in camera* review.  After a thorough review of the *in camera* submissions and for the reasons stated herein, the motion is denied.

## I.    Background

On April 20, 2016, Plaintiff filed her class action Complaint (Doc. 1) against Defendant, alleging violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii).  Among other things, Plaintiff alleges that Defendant "used an automatic telephone dialing system to initiate and make telemarketing calls to Plaintiff's cellular telephone number," that the "calls were placed with a predictive dialer," and that Defendant "did not have

Plaintiff's 'prior express written consent' to initiate the [] calls." (Doc. 1 at 6-7, ¶¶ 28, 29, 33).

This case is not the first time Defendant has been accused of placing automated phone calls to cellular telephones in violation of the TCPA.  According to Defendant, in March of 2012, plaintiffs Brian Connelly, Alicia Sikes, and Keith Merritt filed a lawsuit alleging violation of the TCPA in the Southern District of California (the *Connelly* action).  In that action, Defendant retained Randall A. Snyder—first, as a consulting expert, then later designated as a testifying expert.  Mr. Snyder prepared an expert report for Defendant and was deposed.  On October 29, 2013, Defendant ultimately prevailed on its motion to defeat class certification, the case was voluntarily dismissed in March 2014, and the *Connelly* plaintiffs appealed the class certification ruling the same month.  In 2016, oral argument was held before the United States Court of Appeals for the Ninth Circuit.  However, by order of the Ninth Circuit on February 8, 2017, the appeal was withdrawn pending the decision of the Supreme Court of the United States in *Baker v. Microsoft Corp.*, 797 F.3d 607 (9th Cir. 2015), *cert. granted*, 136 S. Ct. 890 (2016) (No. 15-457).  Accordingly, the *Connelly* action is functionally stayed pending the Supreme Court's ruling in *Baker*.

Defendant states that, even though the *Connelly* action is on appeal, it continued to have discussions with Mr. Snyder regarding the developments relating to and defense strategies regarding the TCPA through 2014 and consulted again with Mr. Snyder in 2015.  Defendant contends that Mr. Snyder, as its expert in the *Connelly* action, was apprised of confidential information regarding Defendant's systems, policies, practices, legal theories, strategies, and work product, among other things.  Defendant further contends that Plaintiff's retention of Mr. Snyder for the instant case in early 2017 is "a deliberate attempt to obtain confidential information regarding [Defendant's] telemarketing practices, and its strategies, impressions, and legal

2

positions" with regard to the TCPA. (Doc. 55 at 7).

Defendant notes that Mr. Snyder remains its designated expert in the *Connelly* action and asserts that, should the *Connelly* action be remanded, and should the plaintiffs in *Connelly* argue to extend the class period through the present, the proposed classes in *Connelly* and the instant case would overlap; in such case, Defendant would be unable to use Mr. Snyder's services in the *Connelly* action and would be greatly prejudiced. Defendant now requests that the Court disqualify Mr. Snyder as an expert for Plaintiff and disqualify Plaintiff's attorney and law firm from representing Plaintiff in this action.

## II.   <u>Discussion</u>

"Federal courts possess the inherent power to disqualify an expert witness." *United States ex rel. Desrosiers v. Thaller*, No. 12-22445-CIV-LENARD/SELTZER, 2016 WL 6441548, at *14 (S.D. Fla. Nov. 1, 2016); *see also Rhodes v. E.I. Du Pont De Nemours & Co.*, 558 F. Supp. 2d 660, 664 (S.D. W. Va. 2008). "That power derives from the necessity to protect privileges which may be breached when an expert switches sides, and from the necessity to preserve public confidence in the fairness and integrity of judicial proceedings." *Thaller*, 2016 WL 6441548, at *14 (quotation marks and citation omitted).

However, the disqualification of an expert witness is a "drastic remedy," *id.* at 14, and courts are "reluctan[t] to disqualify expert witnesses who possess useful specialized knowledge." *Id.* (citation and internal quotation marks omitted); *Rhodes*, 558 F. Supp. 2d at 664. Ultimately, the Eleventh Circuit has "decline[d] to recognize any blanket rule or policy against 'side-switching.'" *Industrial Risk Insurers v. M.A.N. Gutehoffnunghütte*, 141 F.3d 1434, 1445 (11th Cir. 1998).

In determining whether disqualification of an expert is proper, the Court first considers

"whether it was objectively reasonable for the first party who claims to have retained the expert to conclude that a confidential relationship existed." *In re Androgel Antitrust Litigation (No. II)*, No. 1:09–MD–2084–TWT, 2011 WL 1882516, at * 3 (N.D. Ga. May 17, 2011); *Thaller*, 2016 WL 6441548, at *15.  Second, the Court "assess[es] whether any confidential or privileged information [was] disclosed by the first party to the expert." *Androgel*, 2011 WL 1882516, at * 3; *Thaller*, 2016 WL 6441548, at *15.

Defendant, as the party seeking disqualification in this case, "bears the burden of showing the existence of confidentiality and its non-waiver." *Thaller*, 2016 WL 6441548, at *15; *Androgel*, 2011 WL 1882516, at * 3.  Disqualification should occur only if both questions are answered in the affirmative. *Thaller*, 2016 WL 6441548, at *15; *Androgel*, 2011 WL 1882516, at * 3. Additional considerations include policy and fairness, such as "the availability of an alternative expert witness and, when the assessment is made at late stages in the litigation, the potential disruption to the judicial proceedings." *Thaller*, 2016 WL 6441548, at *15 (citation and internal quotation marks omitted).

A.     <u>Purported Confidential Relationship</u>

Defendant contends that a confidential relationship existed between itself and Mr. Snyder, citing its retention of, and more than a year long relationship with, Mr. Snyder as an expert in the *Connelly* case.  Defendant also contends that this purported confidential relationship extended into 2015, based on Defendant's email correspondence and two telephone conferences with Mr. Snyder.  However, as Plaintiff points out, Defendant has not identified a confidentiality agreement executed by Mr. Snyder with regard to the *Connelly* action, and Mr. Snyder avers that he cannot recall or find a copy of any such agreement. (Doc. 56 Ex.4 at 2, ¶7).

Moreover, as a testifying expert, if the *Connelly* action is remanded, Mr. Snyder will be

4

required to testify, if asked on cross examination, about the "facts or data that [Defendant's] attorney provided and that [Mr. Snyder] considered in forming the opinions to be expressed," as well as any "assumptions that [Defendant's] attorney provided and that [Mr. Snyder] relied on in forming the opinions to be expressed," *see* Fed. R. Civ. P. 26(b)(4)(C), in the *Connelly* action. Therefore, such facts, data, or assumptions relevant to the instant case are discoverable in any event and are not confidential.

Given these circumstances, although it was clear Mr. Snyder was retained as an expert (and ultimately a testifying expert) in the *Connelly* action, the Court cannot find, on the facts before it, that it was objectively reasonable for Defendant to conclude that its relationship with Mr. Snyder was a confidential one.[1] *See Wyatt v. Hanan*, 871 F. Supp. 415, 420 (M.D. Ala. Oct. 28, 1994) ("[A]bsent compelling equitable reasons to the contrary, any substantial ambiguity regarding whether there is a confidential relationship between an attorney and an expert should be resolved against the attorney seeking to invoke the relationship.").[2]

B.    Purported Disclosure of Confidential Information

Additionally, even if the Court were to determine that the relationship was confidential, Defendant has not persuaded the undersigned that confidential information relevant to the instant case was disclosed to Mr. Snyder.

---

[1] Nor does the undersigned find that anything in the communications produced by the parties for *in camera* review compels a different conclusion.

[2] The Court in *Wyatt* reasoned that "lawyers are in the best position to develop[] mechanisms to assure that both they and the expert have a clear and unambiguous understanding that a confidential relationship has been created" and that "lawyers have the legal background and experience enabling them to anticipate possible problems in the future." *Wyatt*, 871 F. Supp. at 420-21. "Therefore, because lawyers seeking to invoke the confidential relationship have the knowledge, experience, and the ability to avoid the conflict, it is appropriate that the consequences for failing to take the necessary precautionary measures should fall upon them." *Id.* at 421.

Defendant contends that Mr. Snyder was apprised of Defendant's impressions, case strategies, and work product relating to Defendant's defense of TCPA class action lawsuits generally. But, "'[u]nlike attorney-client communications, discussions between parties or counsel and experts do not carry the presumption that confidential information was exchanged.'" *Thaller*, 2016 WL 6441548, at *18 (quoting *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1094 (N.D. Cal. 2004). In support of its position that Defendant disclosed relevant confidential information to Mr. Snyder, Defendant submitted for *in camera* review a number of written communications between counsel for Defendant and Mr. Snyder. However, upon review of the materials submitted, the undersigned does not conclude that confidential information relevant to the instant case was disclosed to Mr. Snyder.

Defendant also explains that Mr. Snyder was privy to Defendant's policies and procedures relating to its compliance with the TCPA and Defendant's telemarketing practices. However, such technical information is not confidential. *See e.g.*, *Koch Refining Co. v. Jennifer L. Boudreau M/V*, 85 F.3d 1178, 1182 (5th Cir. 1996). Even if such information were confidential, the undersigned is not persuaded—by Defendant's argument or by materials submitted by Defendant for *in camera* review—that the information is relevant to the instant case, as the instant case involves a different telephone dialing system, different form of consent, and a class limited to calls placed during a later time period.

Finally, policy considerations weigh in favor of denying the motion to disqualify Mr. Snyder as Plaintiff's expert. Defendant argues that, should the *Connelly* case be remanded and should Mr. Snyder remain a witness for Plaintiff in the instant case, it "would be forced into the untenable position of both needing to *accredit* [Mr. Snyder's] first opinion in *Connelly*, while simultaneously needing to *discredit* [Mr. Snyder's] opinion in [the instant] action." (Doc. 55 at

15).  Defendant also argues that its relationship with Mr. Snyder was formed for appropriate reasons—not merely to preclude Mr. Snyder from acting as Plaintiff's expert in the instant action—and that there is no "genuine argument that suitable experts in Mr. Snyder's field are few and far between." (*Id.*).  However, Plaintiff points out that Mr. Snyder has been working as an expert for Plaintiff's counsel for seven years—including two cases prior to Defendant's retention of Mr. Snyder in *Connelly*.

Further, Defendant asserts that reasonable inquiry into Mr. Snyder's background by counsel for Plaintiff would have revealed the alleged conflict at issue.  Inquiry by Plaintiff did reveal Mr. Snyder's involvement in the *Connelly* case, and Mr. Snyder indicated to Plaintiff's counsel that he did not have confidential information relevant to the instant case.  The undersigned ultimately finds Defendant's reasonable inquiry argument  not persuasive, as reasonable inquiry by Defendant would have revealed Mr. Snyder's involvement in prior cases as an expert for plaintiffs/consumers.  Yet, counsel for Defendant stated at the hearing that she did not know Mr. Snyder served as an expert for plaintiffs, including for counsel for Plaintiff in this case, in the past.

Finally, Defendant argues that there are plenty of experts that Plaintiff could have retained, other than Mr. Snyder.  Plaintiff stated that it knew of only three such experts, that Defendant retained two of the three in *Connelly*, and that the third was out of the country for some time.  At the hearing, Defendant identified a few other experts and generally referenced a wide field of companies creating the types of telephone systems at issue in this case.  But Plaintiff pointed out that those experts were defense experts and that the existence of a large industry merely reveals more experts for defendants.  Overall, the undersigned finds Defendant's argument unavailing.

## III.    Conclusion

As Defendant has not demonstrated that it was objectively reasonable for it to conclude

that a confidential relationship with Mr. Snyder existed or that any relevant confidential or privileged information was disclosed to Mr. Snyder, and as policy considerations also weigh in favor of Plaintiff's continued relationship with Mr. Snyder as its expert in the instant action, the undersigned declines to disqualify Mr. Snyder as Plaintiff's expert witness.  Given this ruling, there is no need for the undersigned to consider Defendant's argument that Plaintiff's counsel should also be disqualified.

Accordingly and upon consideration, it is **ORDERED** that:

(1)     Defendant's Motion to Disqualify Plaintiff's Expert Witness, Randall A. Snyder, and to Disqualify Plaintiff's Counsel of Record (Doc. 55) is **DENIED**; and

(2)     the Clerk is **DIRECTED** to file under seal (as sealed exhibits to this order) the documents submitted for in camera review.

**DONE AND ORDERED** in Tampa, Florida on this 24th day of July, 2017.

AMANDA ARNOLD SANSONE
United States Magistrate Judge