**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| **MELANIE GLASSER,** *individually and on behalf of all others similarly situated*, <br><br> **Plaintiff,** <br><br> v. <br><br> **HILTON GRAND VACATIONS COMPANY, LLC,** <br><br> **Defendant.** | **CIVIL ACTION NO.** <br> **8:16-cv-00952-JDW-AAS** |

### PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

The response brief of Hilton Grand Vacations Company, LLC ("HGV") makes clear that the only dispute on the merits is common to the entire class: whether the system HGV used to place its timeshare sales calls (capable of placing 1,000 simultaneous calls) is an automatic telephone dialing system (ATDS) under the TCPA. HGV concedes that the calls are "telemarketing" under the FCC's rules, that it did not have the "prior express written consent" required for telemarketing calls, that the numbers it called were cellphones, and that its records identify everyone called. Resolution in a single preceding for all class members of whether HGV used an ATDS is a text book case for class certification.

HGV argues "telemarketing is not a bad word" (Doc. 93 at p.1), yet Congress expressly addressed the harm caused by telemarketing when it enacted the TCPA. 105 Stat. 2394, at § 2(6) ("consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers"). Today, complaints about telemarketing are on the rise. The FTC reports "consumer complaints about unwanted telemarketing calls received increased from just under 3.6 million during FY 2015 to just over 5.3 million during FY 2016." *FTC*

*Issues FY 2016 National Do Not Call Registry Data Book* (December 9, 2016).[1] Plaintiff seeks to hold one of these telemarketers responsible for its actions.

## I. Every Single Class Member Suffered a Concrete Injury-in-Fact

HGV contends that certification is improper because absent class members might lack Article III standing. Yet it concedes that every single class member received a telemarketing call from HGV on their cellphone. This fact alone establishes a concrete injury-in-fact. *Cordoba v. DIRECTV*, 320 F.R.D. 582, 595 (N.D. Ga. 2017) ("an overwhelming majority of courts . . . have continued to hold that the mere receipt of telemarketing calls, and/or text messages in violation of the TCPA constitutes sufficient harm for purposes of Article III").

As this Court held when it rejected HGV's argument that Plaintiff lacked standing, the Eleventh Circuit's precedent in *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245 (11th Cir. 2015) is dispositive. *Doc. 42* at p. 4, n. 2. The court held:

> "We find that Palm Beach Golf has Article III standing sufficient to satisfy the injury requirement because it has suffered a concrete and personalized injury in the form of the occupation of its fax machine for the period of time required for the electronic transmission of the data (which, in this case, was one minute)."

*Id.* at 1251. Just like the fax at issue in *Palm Beach*, the cellphone of every single class member in this case was occupied by the receipt of HGV's telemarketing call. Thus, courts in this circuit have repeatedly held that the mere receipt of a call alleged to violate the TCPA is a concrete injury. *See e.g. Rogers v. Capital One Bank*, 190 F.Supp. 3d 1144, 1147 (N.D. Ga. 2016) ("Because the Plaintiffs allege that the calls were made to their personal cell phone numbers, they have suffered particularized injuries because their cell phone lines were

---

[1] Available at, https://www.ftc.gov/news-events/press-releases/2016/12/ftc-issues-fy-2016-national-do-not-call-registry-data-book

unavailable for legitimate use during the unwanted calls."); *Tillman v. Ally Financial, Inc.*, 2017 U.S. Dist. LEXIS 71919, *16 (M.D. Fla. 2017) ("Congress has prohibited the making of certain prohibited calls, and plaintiff has a right under the TCPA to be free of such prohibited calls. The Court finds that receipt of such calls made in violation of the statute is an injury that Congress has elevated to the status of a legally cognizable injury through the TCPA.")

Moreover, the federal courts of appeal are unanimous in finding standing satisfied in these cases, as there are numerous concrete injuries inherent in the receipt of such communications, including (i) nuisance and privacy injuries (*Susinno v. Work Out World*, 862 F.3d 346, 351 (3rd Cir. 2017) (finding a "nuisance and invasion of privacy resulting from a single prerecorded telephone call"); *Van Patten v. Vertical Fitness Group*, 847 F.3d 1037, 1043 (9th Cir. 2017) (same for receipt of two text messages)); (ii) the invasion of property interests in one's telephone line (*see Palm Beach supra*); and (iii) the violation of statutory rights to be free from such communications (*see Leyse v. Lifetime Entm't Servs.*, 679 Fed. Appx. 44, 46 (2d Cir. 2017) (unpublished) ("Insofar as the TCPA protects consumers from certain telephonic contacts, we conclude that Leyse's receipt of such an alleged contact in the way described demonstrates more than a bare violation and satisfies the concrete-injury requirement for standing."); *Golan v. Veritas Entm't*, 788 F.3d 814, 819-21 (8th Cir. 2015) (receipt of two robocalls in violation of right to be free from such calls sufficient to establish standing); *IMHOFF Inv. v. Alfoccino*, 792 F.3d 627, 633 (6th Cir. 2015) (same).

Although HGV concedes[2] that it did not obtain the "prior express written consent" required for "telemarketing" calls (*see* 47 C.F.R. § 64.1200(a)(2); 47 C.F.R. § 64.1200(f)(8)),

---

[2] *See Doc. 93* at p. 3, n.3.

it claims that some of the class members provided consent under the lesser "prior express consent" standard applicable to *non-telemarketing* calls (*see* 47 C.F.R. § 64.1200(a)(1)) and therefore suffered no injury. To be clear, HGV concedes that its consent argument would fail on the merits, but contends that this inadequate defense nevertheless erases Article III standing.

First, HGV is incorrect that Congress only recognized harm from *unsolicited* calls; it also saw the harm in telemarketing and automated calls. 105 Stat. 2394, at § 2(6) ("consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers"). This Court itself held "[t]he TCPA was enacted by Congress in response to evidence 'that automated or prerecorded calls are a nuisance and an invasion of privacy.'" *Doc. 42* at p. 3, quoting *Mais v. Gulf Coast Collection Bureau*, 768 F.3d 1110, 1117 (11th Cir. 2014).

Second, an individual does not lack standing simply because she might have consented to the injury. Indeed, this Court already rejected the argument when HGV moved to dismiss:

> "Prior express consent is an affirmative defense under the TCPA. And whether Plaintiff consented to the calls goes to the merits of her claim, not whether jurisdiction is proper."

Doc. 42 at pp. 3-4. This relationship between consent and injury-in-fact is well established. In *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), the Supreme Court ruled that a "tester" plaintiff who purposefully sought out violations of the Fair Housing Act by applying for real estate "without any intention of buying or renting a home" and "fully expecting that he would receive false information" still suffered a concrete injury-in-fact sufficient for standing when the defendants provided false information in response to his application. *Id.* at 374. As the court held, the plaintiff's invitation and expectation of harm "does not negate the simple fact of injury." *Id.* Thus, courts have found Article III standing satisfied even where

4

"the evidence was overwhelming that [the plaintiff] consented to the harm it claims it suffered." *Beyond Sys. v. Kraft Foods*, 777 F.3d 712, 716-18 (4th Cir. 2015).  To be sure, consent might cause a loss on the merits, but it does not erase jurisdiction. If a boxer consents to competition resulting in a broken jaw, that consent does not erase the injury that actually exists – a broken jaw.  If he sued, he might lose on the merits, but he would have standing.

As this Court recognized, the distinction between the merits and standing is particularly clear with respect to the TCPA, because "express consent is an affirmative defense on which the defendant bears the burden of proof." *Doc. 42* at pp. 3-4.  Thus, numerous courts have found Article III satisfied in a TCPA case <u>even where the plaintiff consented to the calls and therefore loses on the merits</u>. In *Van Patten*, the Ninth Circuit held that a plaintiff who received two text messages satisfied the injury in fact requirement because he had alleged the very injury the Congress identified – an invasion of privacy and disturbance of solitude. *Van Patten*, 847 F.3d at 1043.  But later in the same opinion, the court found that the plaintiff had in fact consented to receive them and therefore lost on the merits. *Id.* at 1045-46.  That consent did not erase the underlying injury in fact, which of course provided the basis for the court's jurisdiction to make the merits determination in the first place.  Similarly, in *Mais*, the Eleventh Circuit did not lose jurisdiction in that TCPA case to enter its ruling in favor of the defendant after finding that the plaintiff consented to the calls. 768 F.3d at 1126.  Numerous courts are in accord. *See Wick v. Twilio Inc.*, 2017 U.S. Dist. LEXIS 107936, *3-4, *16-17 (W.D. Wash. 2017) (finding Article III standing satisfied in TCPA case and then ruling that the plaintiff consented and therefore loses on the merits); *Broking v. Green Brook Buick GMC Suzuki*, 2017 U.S. Dist. LEXIS 134026, *18-21 (D. N.J. 2017) (same); *Zani v. Rite Aid Headqtrs. Corp.*,

2017 U.S. Dist. LEXIS 53772, *20, 55 (S.D. N.Y. 2017) (same). These opinions demonstrate that in a TCPA action, "consent" is merits issue, which does not negate any injury-in-fact.

HGV cites a single case, *Legg v. PTZ Ins. Agency*, 2017 U.S. Dist. LEXIS 131200 (N.D. Ill. 2017) in support of its argument that consent would negate the injury. As the cases cited above show, however, that case is a true outlier. It further conflicts with this court's own ruling that consent does not impact the injury-in-fact analysis as it confuses a possible defense to an action on the merits with standing. *Doc. 42* at pp. 3-4.

## II. The Article III Standing of Absent Class Members is Irrelevant in Any Case

Hilton contends that *if* a significant number of class members did not suffer any injury-in-fact sufficient for Article III standing, then a class cannot be certified. Of course, it has not shown that a single class member consented for any calls. Regardless, the class members were injured, as described above, but the inquiry, ultimately, has no bearing on class certification. *See* e.g., *Neale v. Volvo Cars of N. Am.*, 794 F.3d 353, 367 (3rd Cir. 2015) ("requiring Article III standing of absent class members is inconsistent with the nature of an action under Rule 23."); *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010) ("certification requirements neither require all class members to suffer harm or threat of immediate harm nor Named Plaintiffs to prove class members have suffered such harm."); *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 308 (5th Cir. 2009) ("Class certification is not precluded simply because a class may include persons who have not been injured by the defendant's conduct."); *In re Nexium Antitrust Litig.*, 777 F.3d 9, 21 (1st Cir. 2015).

Thus, courts within the Eleventh have frequently rejected HGV's argument. For instance, in *Vinson v. P&G Mfg. Co.*, the court held:

> "In determining whether to certify the class that Plaintiffs propose, the Court must not focus on the standing of unnamed class members . . . the Court must focus on the named plaintiffs . . . Whether the unnamed class members have standing is irrelevant."

2008 U.S. Dist. LEXIS 91559, *9-10 (S.D. Ga. 2008); *see also Coleman v. Cannon Oil Co.*, 141 F.R.D. 516, 524 (M.D. Ala. 1991) ("These passive members need not make any individual showing of standing[.]"), citing *Newburg on Class Actions*, § 2.07, at 53-54; *Mohamed v. Offlease Only*, 320 F.R.D. 301, 310, n.3 (S.D. Fla. 2017) ("We reject Defendant's contention that absent class members must have Article III standing.")  Hilton concedes that there is no decision from the Eleventh Circuit requiring a different result here. *Doc. 93* at p. 14.

### III.  A Class Action is the Superior Form of Adjudication

HGV argues that the superiority requirement is not satisfied "in light of the enormous and constitutionally suspect aggregated damages sought in this case." *Doc. 93* at p. 17.  Yet "the threat of disproportionate damages is 'not an appropriate consideration for a court assessing the superiority of a class action.'" *Mohamed*, 320 F.R.D. at 319, quoting *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, 2014 U.S. Dist. LEXIS 177222, *24 (S.D. Fla. 2014); *see also Shady Grove Orthopedic Associates, v. Allstate Insurance Co.*, 130 S. Ct. 1431, 1443 (2010).  While "[a]n award that would be unconstitutionally excessive may be reduced, . . . constitutional limits are best applied after a class has been certified. Then a judge may evaluate the defendant's overall conduct and control its total exposure. Reducing recoveries by forcing everyone to litigate independently - so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims - has little to recommend it." *Manno v. Healthcare Revenue Recovery Group*, 289 F.R.D. 674, 692 (S.D. Fla. 2013), quoting *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953-54 (7th Cir. 2006)

(citations omitted). Thus, even if HGV is right (it is not) that an aggregated award would be excessive, that is not a barrier to class certification.

## IV. Plaintiff is an Adequate Class Representative

HGV contends that Plaintiff lacks sufficient knowledge about this case to serve as a class representative. This contention has no merit. To begin, "the threshold of knowledge required to qualify a class representative is low." *Bacon v. Stiefel Labs.*, 275 F.R.D. 681, 694 (S.D. Fla. 2011). "A class representative need only possess a minimal degree of knowledge necessary to meet the adequacy standard." *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3rd Cir. 2007). Indeed, the incentive to "vigorously prosecute a class action . . . quite often is supplied more by counsel than by the class members themselves." *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 727 (11th Cir. 1987).

In this case, Plaintiff's testimony demonstrates more than sufficient knowledge. First, contrary to HGV's assertions, Plaintiff did review her complaint before it was filed and is familiar with its contents. *Ex. 1 - Glasser Dep.* at 64:11-20, 32:3-6. In addition, she reviewed documents that HGV produced in discovery. *Id.* at 42:4-9. She understands the parameters of the class, the class's legal claims, the relief sought, and her fiduciary duty to the class. *Id.* at 50:20-24, 60:9-18, 64:21-65:4, 79:14-21, 133:19-23, 139:4-9, 152:9-19, 153:17 - 154:3. Plaintiff also traveled from Tampa to Orlando to attend the mediation, further demonstrating her vigorous representation of the class. *Doc. 54* at ¶ 2. Nothing more is required.

## V. No Class Member Waived their Right to Participate in this Class Action

Finally, HGV makes a two-sentence argument that any class member who is a member of a hotel rewards program called Hilton Honors, offered by a completely separate company,

waived their right to participate in a class action against HGV. *Doc. 93* at p. 19. The facts do not support this contention. Indeed, the Court has already rejected HGV's contention that the Honors terms govern this dispute. *Doc. 42* at pp. 6-7. Although HGV again attempts to rely on the 2010 version of the Honors terms, the current version controls, as it "supersedes all prior Terms & Conditions." *See Doc. 42* at p. 6, n. 7; *Ex. 2 – Current Terms* at p. 1. The terms "are intended to protect . . . Hilton HHonors Worldwide, L.L.C. ('Hilton Honors')." *Id.* The terms further state that Hilton Honors is "a wholly owned subsidiary of Hilton Domestic Operating Company Inc." and define Hilton Honors as "Hilton Honors Worldwide, LLC, its subsidiaries, affiliates, officers, directors, partners, employees, and agents." *Id.*

An "affiliate" is a "corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." *Black's Law Dictionary* (10th ed. 2014). Yet here are the corporate structures of the entities involved:



Hilton Grand Vacations, Inc. is a separate company from Hilton Worldwide Holdings Inc., which has no ownership interest in either HGV or its parent Hilton Grand Vacations, Inc. *Ex. 3 - LLC Agreement* at pp. 1-2; *Ex. 4 - 10k* at pp. 2-4, 5-6; *Ex. 5 – Hilton Worldwide 10k* at p. 2-3, 9. Thus, HGV is not a corporate affiliate of Hilton Honors Worldwide, L.L.C.

To the extent the 2013 versions controls, it would not help HGV. That version states that Hilton Honors Worldwide, L.L.C. is "a wholly owned subsidiary of Hilton HHonors

9

Worldwide, Inc." *Doc. 93-6* at p. 2.  HGV has failed to submit any evidence that it was ever owned or affiliated with Hilton HHonors Worldwide, Inc.  Any ambiguities in the alleged agreement must be construed against HGV. *St. Paul Mercury Ins. Co. v. FDIC*, 774 F.3d 702, 708 (11th Cir. 2014).  Thus, no class member waived their right to participate in this case.

## VI. The Court Should Exclude the Testimony of Bobby J. Calder, PH.D

Finally, HGV submits an untimely "Expert Report of Bobby J. Calder, PH.D," which it failed to disclose to Plaintiff by the deadline the Court set for expert disclosures. *Doc. 70* (deadline set for September 29, 2017); *Doc. 93-1* at p. 12 (Report dated October 6, 2017).  The Court should exclude this testimony. *See* Fed. R. Civ .P. 37(c)(1).

Respectfully Submitted,

/s/ Timothy J. Sostrin
Timothy J. Sostrin (*pro hac vice*)
Keith Keogh
KEOGH LAW, LTD
55 W. Monroe St, Suite 3390
Chicago, IL 60603
312-726-1092
312-726-1093 (fax)
Keith@Keoghlaw.com
TSostrin@KeoghLaw.com

William Peerce Howard (FBN 0103330)
Amanda J. Allen (FBN 098288)
THE CONSUMER PROTECTION FIRM
TheConsumerProtectionFirm.com
210 A-South MacDill Ave.
Tampa, Florida  33609
Telephone:  (813) 500-1500
Billy@TheConsumerProtectionFirm.com
Amanda@TheConsumerProtectionFirm.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 12, 2018, I electronically filed the foregoing Reply in Support of Motion for Class Certification with the Clerk of the Court by using the CM/ECF system, who will send a notice of electronic filing to all counsel of record.

By:  s/ Timothy J. Sostrin

Counsel for Plaintiff