UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MELANIE GLASSER, individually
and on behalf of all others similarly
situated**

    **Plaintiff,**

v.                                                             Case No: 8:16-cv-952-JDW-AAS

**HILTON GRAND VACATIONS
COMPANY, LLC.**

    **Defendant.**
_____/

## ORDER

**BEFORE THE COURT** are Defendant's Motion for Summary Judgment (Dkt. 98) and Plaintiff's opposition (Dkt. 104). Also before the Court are Plaintiff's Motion for Class Certification (Dkt. 91), Defendant's Response (Dkt. 93), and Plaintiff's Reply (Dkt. 94). Upon consideration, Defendant's Motion for Summary Judgment (Dkt. 98) is **GRANTED**. Plaintiff's Motion for Class Certification (Dkt. 91) is **DENIED** as moot.

## Background

In this action alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), Plaintiff alleges that between October 16, 2013 and April 2, 2014, Hilton Grand Vacations Company, LLC used an automated telephone dialing system ("ATDS") to make telemarketing calls to her cell phone without her consent.[1] (Dkt. 1 ¶ 13). She brings this action on

---

[1] Plaintiff's Complaint alleges that the automated calls occurred "[t]hroughout the month of February 2016." (Dkt. 1 ¶ 13). Notwithstanding, both parties discuss a date range of "between October 16, 2013 and April 2, 2014."

behalf of herself and all others similarly situated, seeking class action certification, injunctive relief, actual and statutory damages, and attorney's fees and costs.

## Standard

Summary judgment is appropriate if Defendant shows "there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (moving party bears initial burden of showing, by reference to materials on file, that there are no genuine disputes of material fact that should be decided at trial) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The facts are viewed and reasonable inferences are drawn in the light most favorable to Plaintiff, the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). On the other hand, "'[i]f no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted.'" *Lima v. Fla. Dep't of Children & Families*, 627 F. App'x 782, 785-86 (11th Cir. 2015) (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir.1994)).

## Automatic Telephone Dialing System

In its motion, Defendant contends that Plaintiff has not shown that it used an ATDS to make the calls to her cell phone, an essential element of a cause of action under §227(b)(1)(A). (Dkt. 98, p. 3). More specifically, Defendant contends that it is entitled to summary judgment because the technology it used to call Plaintiff's cell phone, the Intelligent Mobile Connect system ("IMC System"), required human intervention before a call could be made, contrary to the statutory definition of an automatic telephone dialer system. (Id. at p. 12 ¶ 3). Defendant maintains that the undisputed facts show that before a call could be made, a customer's record, including, the customer's cell number, appeared on the agent's computer screen, and the agent then clicked on the

2

"Make Call" button on the screen to initiate the call. Plaintiff counters that although Defendant's agents clicked on the "Make Call" button to initiate a call, that only placed the number in a queue to be called, and a computer actually dialed the number. According to Plaintiff, human intervention was therefore not required to dial the number. (Dkt. 104, pp. 2, 18).

**The Undisputed Facts**

Eric Beekman, Defendant's Senior Director of Customer Relationship Management and Contact Management Marketing, testified that calls were placed manually by employees clicking a "Make Call" button on the IMC System computer screen (the IMC Desktop Application). (Dkt. 118, Beekman Dep., at 82:17-23, 101:20-21, 102:21-22, 103:20-24). Those employees are referred to as "manual dialing marketing agents." (Id. at 78:20-21). When an agent clicks on the "Make Call" button, "the phone number will be attempted to be dialed" through the IMC System. (Id. at 102:2-22).

Rian Logan, a technical sales consultant with Genesys[2], described the IMC System's capabilities. (Dkt. 119, Logan Dep., at 8:8, 12:1-4). According to Logan, that system was incapable of automatically launching calls. (Id. at 85:7-11, 128:17-25, 131:8-12). Rather, an "agent actually initiates the manual dial." (Id. at 46:3-4). According to Logan:

- The IMC System utilizes a business software automation tool called "Interaction Process Automation." (Id. at 20:24-25, 21:1-9, 21:19-21, 23:9-25, 24:1-25, 25:1-8).

---

[2] Genesys purchased Interactive Intelligence Inc. in 2016. (Dkt. 119, Logan Dep., at 9:3-5). Interactive Intelligence Inc. developed and licensed the IMC System to Defendant. (Dkt. 104-14). Prior to working at Genesys, Logan worked as a technical sales consultant for Interactive Intelligence Inc. (Dkt 119, Logan Dep., at 8:18-22).

- Interaction Process Automation handles the workflow function of retrieving and presenting a customer's record (name and phone number) to a console operator. (Id. at 24:15-21, 36:1-10, 68:2-8, 68:17-20, 129:19-24).

- Once the console operator receives a "work form" on their screen, *i.e.*, a number to dial, "[t]he console operator must click to dial." (Id. at 24:13-21, 46:12-23, 68:17-20, 129:17-21).

- When the "make call" button is pressed, a call is launched. (Id. at 46:12-23, 71:18-23, 72:3-4).

- "The media servers . . . then use call analysis to determine if it's a live speaker or not, . . . [it] will determine if it's a busy signal, an answering machine or live speaker. . . . If it's a live speaker, its transferred to a waiting agent." (Id. at 24:21-25, 25:1-2).

- The calls are made through the Public Switched Telephone Network and technically categorized as Voice Over IP[3] calls. (Id. at 23:9-20, 24:13-21, 57:4-7).

- The console operators are making "human-based" decisions as they "control the pace" of the calls and by "connecting available agents to people . . . ." (Id. at 102:7-15, 103:2-15, 131:19-25).

- "If there are no available agents [and] you click the "make call" button, it will not make a call." (Id. at 112:1-2).

---

[3] Voice Over Internet Protocol is a technology that transmits voice calls using a broadband internet connection instead of a regular phone line. Voice Over Internet Protocol (VoIP), Fed. Comm. Commission, https://www.fcc.gov/general/voice-over-internet-protocol-voip (last visited August 15, 2018).

Accordingly, and as Logan explained, although these operators were "not ten-digit dialing" or "keying in all the 10 digits," they were manually clicking a button to initiate dialing. (Id. at 46:13-23, 74:6-7, 127:22-24).

**Discussion**

The basic function and defining characteristic of an ATDS is "the capacity to *dial numbers without human intervention*." *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14091 ¶ 132 (2003 FCC Ruling) (emphasis added). This defining characteristic of an ATDS resolves the dispute in this case. The undisputed facts demonstrate that human intervention was required before a cell number could be dialed by Defendant's system. Accordingly, the system is not, by definition, an ATDS under the TCPA.

The TCPA prohibits any person from "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A).[4] To prevail on her TCPA claim, therefore, Plaintiff must show that Defendant called her cell phone using an ATDS. Her claim turns on whether Defendant's IMC System constitutes an "automatic telephone dialer system."

The TCPA defines an "automatic telephone dialer system" as "equipment that has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . to dial such numbers." § 227(a)(1)(A)-(B).[5] This includes equipment that

---

[4] The TCPA was enacted in response to evidence "that automated or prerecorded calls are a nuisance and an invasion of privacy." *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1117 (11th Cir. 2014) (quoting TCPA §2(9), (13), 105 Stat. at 2394, 2395).

[5] The FCC has issued numerous rulings interpreting what qualifies as an ATDS. *See In the Matter of Rules & Regulations Implementing the Tel.Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7971-7978, ¶¶ 10-24 (2015 FCC Ruling); *In the Matters of Rules & Regulations Implementing the Tel. Consumer Prot. Act of* 1991, 27 F.C.C. Rcd. 15391, 15399 (2012 FCC Ruling); 2008 *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

5

has "the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Id.*

The FCC has, on numerous occasions, confirmed this definition. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 15391, 15392 ¶ 2 n.5 (2012 FCC Ruling); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. at 566 ¶ 13 (2008 FCC Ruling). Most recently, on March 16, 2018, the FCC issued a ruling purporting to clarify and effectively expand the definition of an ATDS. *See In the Matter of Rules & Regulations Implementing the Tel.Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015 FCC Ruling). However, that "effort to clarify the types of calling equipment that fall within the TCPA's restrictions" was set aside in *ACA Int'l v. Fed. Commc'n Comm'n*, 885 F.3d 687, 691-92 (D.C. Cir. 2018).[6] The court concluded that the FCC's definition of an ATDS constituted an "unreasonably expansive interpretation of the statute." *Id.* at 692 ("The Commission's understanding would appear to subject ordinary calls from any conventional smartphone to the Act's coverage, an unreasonably expansive interpretation of the statute.").[7]

Relevant here, *ACA Int'l* left intact earlier FCC rulings that "the 'basic function' of an autodialer is to dial numbers without human intervention:"

---

23 F.C.C. Rcd. at 566 ¶ 13 (2008 FCC Ruling); *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-93 ¶¶ 131-134 (2003 FCC Ruling). As noted, an FCC Ruling has the force of law and a district court is without jurisdiction to consider its validity. *Mais*, 768 F.3d at 1121-22.

[6] *ACA Int'l* involved a consolidated appeal from several Circuits. Although not expressly addressed by the Eleventh Circuit, other circuits have held that when an FCC order is appealed in several jurisdictions and combined for review in one circuit, the circuit decision is binding. *See Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 467 (6th Cir. 2017); *Peck v. Cingular Wireless, LLC*, 535 F.3d 1053, 1057 (9th Cir. 2008) (referring to Eleventh Circuit decision addressing validity of an FCC order).

[7] *Keim v. ADF Midatlantic, LLC*, No. 12-80577, 2015 WL 11713593, at *6 (S.D. Fla. Nov. 10, 2015), cited by Plaintiff, relied on the 2015 FCC Order in rejecting the human intervention test. In light of *ACA Int'l*, *Keim* is of questionable value.

> For instance, the ruling states that the "basic function" of an autodialer is the ability to "dial numbers without human intervention." 2015 Declaratory Ruling, 30 FCC Rcd. at 7973 ¶ 14; *id.* at 7975 ¶ 17. Prior orders had said the same. 2003 Order, 18 FCC Rcd. at 14,092 ¶ 132; 2008 Declaratory Ruling, 23 FCC Rcd. at 566 ¶ 13. That makes sense given that "auto" in autodialer—or, equivalently, "automatic" in "automatic telephone dialing system," 47 U.S.C. § 227(a)(1)—would seem to envision non-manual dialing of telephone numbers.
>
> But the Commission nevertheless declined a request to "clarify[ ] that a dialer is not an autodialer unless it has the capacity to dial numbers without human intervention." 2015 Declaratory Ruling, 30 FCC Rcd. at 7976 ¶ 20. According to the Commission, then, the "basic function" of an autodialer is to dial numbers without human intervention, but a device might still qualify as an autodialer even if it cannot dial numbers without human intervention. Those side-by-side propositions are difficult to square.

*Id.* at 703.

In sum, the holding in *ACA Int'l*, the statutory definition of an ATDS, and prior FCC rulings interpreting that definition provide the necessary guidance in determining whether Defendant's IMC System is an ATDS. *See Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 119 (3d Cir. 2018) ("In light of the D.C. Circuit's holding, we interpret the statutory definition of an autodialer as we did prior to the issuance of the 2015 Declaratory Ruling."). As noted, the focus is on whether the system had "the capacity to *dial numbers without human intervention.*" *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14091 ¶ 132 (2003 FCC Ruling) (emphasis added). Defendant's IMC System did not have that capacity.

Although Plaintiff acknowledges "clicker agents" initiate the calling process by clicking the "Make Call' button, she argues that internal software on the server dials the numbers, rather than humans, and that "human intervention is not only not required at the point in time at which the number is dialed, it is not possible as the number is dialed later." (Dkt. 104, pp. 8, 14). Specifically, she argues that "[e]very single call in the IMC System is automatically dialed by computer software from a queue of telephone numbers," "while no human being is on the phone." (Id. at pp. 12-13). She

7

contends that "[t]he clicker agents do not have the ability to confirm whether or not telephone numbers are 'correct' before submitting those numbers to the dialer queue . . . [and] the 'Make Call button' does not launch a call or dial a telephone number." (Id. at p. 13). *ACA Int'l* effectively rejects that contention.

In its discussion of the statutory requirement that an autodialer have the "capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers," the court found that the "ruling's reference to 'dialing random or sequential numbers' means generating those numbers and then dialing them" and observed "that the ruling distinguishes between use of equipment to 'dial random or sequential numbers' and use of equipment to 'call[ ] a set list of consumers.'" *ACA Int'l*, 885 F.3d at 702.[8] The court concluded that "it follows that the ruling's reference to 'dialing random or sequential numbers' means *generating those numbers and then dialing them*" and "[t]he Commission's prior declaratory rulings reinforce that understanding." *Id.* (emphasis added). It follows that Plaintiff's focus on the dialing of the numbers is misplaced. Nothing in the record demonstrates that Defendant's IMC System generated numbers and then called them.[9]

---

[8] Indeed, in pointing out one inconsistency in the ruling's clarification of the definition of an autodialer, the court pondered: "So which is it: does a device qualify as an ATDS only if it can generate random or sequential numbers to be dialed, or can it so qualify even if it lacks that capacity? The 2015 ruling, while speaking to the question in several ways, gives no clear answer (and in fact seems to give both answers).It might be permissible for the Commission to adopt either interpretation. But the Commission cannot, consistent with reasoned decisionmaking, espouse both competing interpretations in the same order. " *Id.* at 703.

[9] The undisputed evidence demonstrates that Defendant compiled a list of telephone numbers belonging to "Hilton honors members," "customers of Hilton through book reservations," and its "current owner base." (Dkt. 118, Beekman Dep., at 25:17, 18; 27:2). This list was "scrubbed" once a week to exclude landline numbers from being called, to insure that only cell numbers were called. (Id. at 49:16-22, 60:20-22). Individual records were pulled from this list and presented to manual dialing marketing agents via the IMC System. (Id. at 105:2-6, 105:17-25-106:1-2, 136:24-25-137:1-15).

8

**The Experts**

In addition to the testimony of Beekman and Logan, Defendant relies on the opinion of its expert, Kenneth Sponsler, in support of its contention that human intervention is necessary before a call is placed on the IMC System. To formulate his opinion, Sponsler conducted onsite inspections of the IMC System and conferred with the architects and operators of the system. (Dkt. 121, Sponsler Dep., at 47:11-14, 49:10-17, 50:9-11). According to Sponsler, in general, on the IMC System, "dial flow is a manual process." (Id. at 94:21-22). The CIC database stores telephone numbers. (Id. at 67:21-23). Names and numbers are presented to the agents, [through the IMC Desktop Application] who then click the "Make Call" button. (Id. at 68:7-12, 84:23-25, 84:1). Prior to clicking this button, the phone numbers have not made it to the process that dials numbers. (Id. at 68:19-25). Software on the CIC server dials the number. (Id. at 56:16-21, 57:1-2).

Sponsler testified that the agents do not have to dial every customer whose phone number displays on their screen, but rather "it is the option that the agent has to either make the call or not." (Id. at 85:11-13:21-22). "It's very manual . . . . It's the agents that are making [sic] clicking and observing the console and seeing if there are available agents or not and making the decision to call." (Id. at 93:23-25, 94:1-2). The IMC System does not control the dial rate, the agents do. (Id. at 63:17-25).

According to Sponsler, "human intervention in this case is the human intervention step to dial." (Id. at 101:9-10, 102:11-12). He identified three components which demonstrate that Defendant's system is not an ATDS: (1) ". . . no call can ever be placed without human intervention for each and every call;" (2) "the system is not capable of dialing from a list of numbers;" and (3) "the system does not produce or store numbers that have been randomly or sequentially generated

9

and didn't dial them." (Id. at 95:4-14). Sponsler's opinion is consistent with the testimony of Beekman and Logan, individuals with personal knowledge of the IMC System.

Based on the undisputed testimony of Beekman and Logan, and confirmed by Sponsler's opinion, human intervention is required before a phone call could be placed by Defendant's IMC System. Indeed, for purposes of summary judgment, independent of Sponsler's opinion, as explained by Beekman and Logan, Defendant's "manual dialing marketing agents" were *integral* to initiating each phone call.

The opinion of Plaintiff's expert, Randall Snyder, does not alter this finding. Nor does it create a material issue of fact.[10] While acknowledging that human intervention is necessary in the calling process, (Dkt. 104-3, Snyder Expert Report, at ¶¶ 59, 63, 64; Dkt. 120, Snyder Dep., at 115:10-15, 152:10-13, 164:3-4), Snyder focuses on when the calls are actually dialed, rather than the agents pushing the "Make Call" button to initiate the calling process. (Dkt. 104-3, ¶ 64 ("There is no doubt that some human agency is involved in this process, . . . but this human agency is not involved in the process of dialing telephone numbers.")). According to Snyder, since the software function on the CIC server dials the number, the IMC System dials numbers without human intervention. (Id. at ¶ 2).

---

[10] Snyder's opinion notwithstanding, summary judgment is not precluded. *See Buckler v. Israel*, 680 F. App'x 831, 835-36 (11th Cir. 2017); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) quoting *Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666, 672-73 (D.C. Cir. 1977) ("Rule 703 was intended to broaden the acceptable bases of expert opinion, but it was not intended, as appellants seem to argue, to make summary judgment impossible whenever a party has produced an expert to support its position."); *see also Am. Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569 (11th Cir. 1985) (finding that summary judgment for defendant proper and no error in assigning "little weight" to plaintiff's expert because his affidavits did not create a material issue of disputed fact).

Snyder's opinion, like Plaintiff's argument, fails to appreciate the integral part that human intervention plays in the calling process.[11] *ACA Int'l* makes it clear that an autodialer must *both* generate the numbers and dial them. Accordingly, it matters not that the computer actually dials the number forwarded to it by the clicking agent. Rather, the focus is on the agent's human intervention in initiating the calling process. Since it is undisputed that calls cannot be made unless an agent clicks on the screen and forwards a telephone number to the server to be called, Defendant's "point-to-click" system does not constitute an autodialer system under the TCPA.[12]

---

[11] Similarly, in *Marshall v. CBE Group, Inc.*, No. 2:16-cv-02406, 2018 WL 1567852, at *7 (D. Nev. Mar. 30, 2018), the district court found that defendant's system did not constitute an ATDS. Snyder was plaintiff's expert in *Marshall*. *Id.* at *6.

> Snyder asserts that the [system] is really designed to perform the function of providing telephone numbers to a dialing system, one at a time by clicking an icon. Therefore, 'the clicker agent who is clicking [] is not performing any type of dialing process; rather, the clicker agent is simply causing a telephone number to be supplied to the [system] to be automatically dialed by that system."

*Id.* The district court noted the significance of "human intervention" in the ATDS analysis, and acknowledged other district court rulings with respect to similar "point-and-click" systems. *Id.* at *7. The court found that the clicker agent's actions were "*integral* to initiating outbound calls." *Id.* (emphasis added). I agree with this reasoning.

[12] Several district courts in this Circuit have found that dialing systems which require agents to use "point and click" technology to initiate calls are not autodialers because "human intervention" is required to make such calls. *See Maddox v. CBE Group, Inc.*, No. 1:17-cv-1909, 2018 WL 2327037, at *5 (N.D. Ga. May 22, 2018) (holding that the "FCC's interpretation requires 'human intervention,' not that agents dial all ten digits of a phone number manually" and that the "focus is on whether the system can automatically dial a phone number, not whether the system makes it easier for a person to dial the number."); *Reyes v. BCA Fin. Services*, 312 F. Supp. 3d 1308 (S.D. Fla. 2018) (acknowledging the reasoning in *Marshall* and noting the importance of factoring in the "human-intermediary utility before placing a call" when analyzing the human intervention requirement); *Pozo v. Stellar Recovery Collection Agency, Inc.*, 8:15-cv-929, 2016 WL 7851415, at *3 (M.D. Fla. Sept. 2, 2016) ("Dialing systems which require an agent to manually initiate calls do not qualify as autodialers under the TCPA."); *Strauss v. CBE Group, Inc.*, 173 F. Supp. 3d 1302, 1310-11 (S.D. Fla. 2016) (granting summary judgment in favor of defendant whereby an agent manually initiated calls by clicking a computer mouse, and noting "human intervention is essential at the point and time that the number is dialed"); *Estrella v. Ltd Fin. Servs., LP*, 8:14-cv-2624, 2015 WL 6742062, at *3 (M.D. Fla. Nov. 2, 2015) (granting summary judgment for defendant where the evidence demonstrated that "the calls were placed manually with the use of human intervention through a 'point and click function'"); *Gaza v. LTD Fin. Servs., L.P.*, 8:14-cv-1012, 2015 WL 5009741, at *1, 4 (M.D. Fla. Aug. 24, 2015) (holding that the calls were placed manually with human intervention when an agent used their computer mouse to click on the phone number to launch the call); *Wilcox v. Green Tree Servicing, LLC*, 8:14-cv-1681, 2015 WL 2092671 (M.D. Fla. May 5, 2015) (denying summary judgment for defendant but stating that "if an agent selects a number to be called," and the system "responds by dialing that number that the agent selects," it can be said that the call was "made as a result of human intervention.").

District courts across the country have consistently issued similar rulings. *See Ammons v. Ally Fin., Inc.*, --- F.

Finally, Plaintiff argues that the IMC System is a predictive dialer under the TCPA. "A predictive dialer is an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call." *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14022 n.31 (2003 FCC Ruling). A predictive dialer may fall within the TCPA's definition of an ATDS, even though it may not "store or produce telephone numbers to be called, using a random or sequential number generator." *Id.* at ¶ 133.

Nothing in the evidence, however, demonstrates that the IMC System used a predictive algorithm or function to engage in predictive dialing. Indeed, the undisputed evidence demonstrates that the IMC System did not have the functionalities of a predictive dialer.[13] Rather, the evidence

---

Supp. 3d ---, No. 17-cv-505, 2018 WL 3134619, at *7 (M.D. Tenn. June 27, 2018) (collecting cases where it was found that human intervention was necessary in the dialer's initiation of calls); *Marshall*, No. 2:16-cv-02406, 2018 WL 1567852, at *7 (The court held that the clicker agents' actions were integral to initiating calls despite plaintiff's expert's contention that these agents were simply placing telephone numbers into a system to be automatically dialed later.); *Smith v. Stellar Recovery, Inc.*, No. 15-cv-11717, 2017 WL 1336075, at *6 (E.D. Mich. Feb. 7, 2017) (finding that the system requires agents to initiate each individual call and granting summary judgment in favor of defendant); *Manuel v. NRA Grp., LLC*, 200 F. Supp. 3d 495, 501-02 (M.D. Pa. 2016), *aff'd* 722 F. App'x 141 (3d Cir. Jan. 12, 2018) (explaining that "point and click systems requiring users to manually initiate each call uniformly necessitate human involvement").

Other courts have held that the human intervention either occurred too early or late in the process. *See Somogyi v. Freedom Mortgage Corporation*, No. 17-6546, 2018 WL 3656158, at *6 (D. N.J. Aug. 2, 2018) (human intervention occurred before the number was selected or dialed by operation of the algorithm); *Ammons*, --- F. Supp. 3d ---, No. 17-cv-505, 2018 WL 3134619, at *7 ("As a matter of common sense, having operators standing by...to take a connected call is not 'human intervention' in the dialer's initiation of calls."); *Morse v. Allied Interstate, LLC*, 65 F. Supp. 3d 407, 410 (M.D. Pa. 2014) (human intervention was not required when the system loaded thousands of numbers into the dialer to be called and then transferred the call upon a human answering); *Sterk v. Path, Inc.*, 46 F. Supp. 3d 813, 819 (N.D. Ill. 2014) (the only human intervention identified prior to sending a text message was the "collection of numbers for [the system's] database of numbers").

[13] Human intervention is likewise a key-factor in analyzing predictive dialers. *See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14091 ¶132 (The FCC's clarification incorporating "human intervention" into the interpretation is directly discussed in the section of the Ruling entitled "Predictive Dialers."). *See also Brown v. NRA Group, LLC*, 6:14-cv-610, 2015 WL 3562740, at *2 (M.D. Fla. June 5, 2015) ("[T]o determine whether a given dialer is a predictive dialing system, and therefore an automated telephone dialing system under the TCPA, the primary consideration under the FCC order is whether human intervention is required

shows that the "clicker agents" control the pace of the calling based on what they observe at their workstations.

As noted, Plaintiff's expert, Snyder, acknowledges that the calls are initiated when the "Make Call" button is clicked, and "[e]ach click provides a telephone number to the dialing system so that those numbers can be dialed by that system, thus initiating outbound telephone calls." (Dkt. 104-3, Snyder Expert Report, at ¶ 59); *see also* (Dkt. 120, Snyder Dep., at 117:8-20 (If the "Make Call" button is not clicked, "the number would not be presented to the dialing system and the dialing system wouldn't dial that number.")).While Snyder professes not to know what constitutes human intervention, the evidence shows that human intervention is necessary for numbers to be dialed, the antithesis of a predictive dialer.[14]

Accordingly, Plaintiff's claim that Defendant placed calls to her cell phone using an ATDS without her consent in violation of the TCPA fails as a matter of law. Defendant's Motion for Summary Judgment (Dkt. 98) is **GRANTED**.

### Motion for Class Certification

"The burden of establishing the propriety of class certification rests with the advocate of the class" *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). Before determining whether to certify a class, the merits of the underlying claim may be considered. *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1343 (11th Cir. 2000). Where, as here, the underlying claim of the proposed class is dismissed by summary judgment, "the issue of class certification is moot." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1297 (11th Cir. 2005). *See Telfair*,

---

at the point in time at which the number is dialed.").

[14] Snyder testified "I don't necessarily know what human intervention is." (Dkt. 120, Snyder Dep., at 83:1-5).

216 F.3d at 1343 ("With no meritorious claims, certification of those claims as a class action is moot.").

Plaintiff proposes a class of:

All persons in the United States whose cellular telephone number Defendant called using the IMC System between October 16, 2013 and April 2, 2014 where the IMC system recorded a result of either "Connected" or Machine." (Dkt. 91, p. 2).

Plaintiff's proposed class, like her individual claim, relies on Defendant's use of an ATDS to place calls. Since Defendant's IMC System is not an ATDS, Plaintiff's Motion for Class Certification is **DENIED** as moot.

## Conclusion

Accordingly, Defendant's Motion for Summary Judgment (Dkt. 98) is **GRANTED**. Plaintiff's Motion for Class Certification (Dkt. 91) is **DENIED** as moot. The Clerk is directed to enter judgment in favor of Defendant, Hilton Grand Vacations Company, LLC and against Plaintiff, Melanie Glasser.

**DONE AND ORDERED** this 24th day of September, 2018.

*/s/ James D. Whittemore*

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record